WORTHINGTON vs. CURD & Co.

Under our statute of assignments, a blank endorsement and delivery of a writing obligatory payable in property, or in money upon a contingency, constitutes such a transfer of the interest in the paper as to vest in the transferee a right of action and recovery against the maker—the commercial law giving the rule as to the form and mode of making assignments of such paper.

In an action upon a writing obligatory payable in property on a certain day, no de-
mand is necessary, on the part of the holder, to entitle him to maintain an action
against the maker. (*Cockrell vs. Warner*, 14 *Ark.* 352). But if the allegation in the
declaration, that demand was made, renders proof of demand necessary, and there be
any evidence of demand, the jury are the judges of its weight.

If the authority of the person making a demand does not sufficiently appear, the au-
thority to make it will be considered as conceded by the defendant, where he makes
no objection to the want of authority, but places his refusal on another ground spe-
cifically.

The *ex parte* affidavit of one of several plaintiffs of the loss of the instrument sued on,
is competent evidence to prove the loss.

Where a general objection is made to the reading of a deposition, which appears regu-
lar on its face, this court will not notice any specific objections made for the first
time in this court.

Instructions that are calculated to mislead the jury, or to the weight to be given to evi-
dence, or that are asked without any evidence being given on which they can be
based, should be refused.

A plea, to an action upon a writing obligatory by an assignee, that it was executed by
the defendant in consideration of certain lands, for which he had received from the
obligee a deed of conveyance with warranty of seizin, freedom from incumbrance, and
for quiet enjoyment; but that there was, at the time of the purchase, and still is an
incumbrance on a part of the lands to a greater amount than the writing sued on, is
demurrable.

And so, of a plea that the assignees did not receive the instrument sued on in the usual
course of trade, or on any legal or valid consideration, and that it was delivered to them
in payment of a bet, and upon no other consideration.

*Appeal from the Circuit Court of Chicot County.*

The Hon. SHELTON WATSON, Circuit Judge, presiding.

PIKE & CUMMINS, for the appellant.    The instrument sued on in
this case, was not assignable at common law.    Its negotiability de-
pends wholly on our statute of assignments.    *Ch.* 15, *Rev. Stat.*
161.

We think the statute was not designed at all to embrace com-
mercial paper: but if it was designed to embrace such paper, and con-
firm its negotiability as established by the law merchant, we deny
that the entire law merchant should be put in force, and applied
to non-commercial paper, made negotiable by the statute, in all

points on which the statute is silent. We contend, that, on such points, not the law merchant, but the common law, as contradistinguished therefrom, must be resorted to, to aid the statute. It is a familiar rule, that common law is not to be presumed to be changed further than the statute expressly changes it. In fixing the rights of the parties, as to non-commercial paper, assignable under the statute, the common law, as to similar contracts, must be resorted to. *Buckner vs. Greenwood*, 1 *Eng.* 200.

Instruments assignable under statute, do not *vest* by an endorsement in blank and delivery, but by being transferred, endorsed, and assigned over to the assignee. In order to vest a *legal title*, under the statute, the *title* must be exhibited *in writing*. See *Block vs. Walker*, 2 *Ark.* 4; *Buckner vs. Greenwood*, 1 *Eng.* 200; secs. 4, 6, 7, ch. 15, *Rev. Stat.*

Even as to commercial paper, a blank endorsement confers, *per se*, no *legal* title, but a power, recognized by courts of law and equity, to perfect a legal title whenever the party may choose; but, until filled up, although the holder may have the equity and a legal power to perfect the title, no legal title exists. *Edwards vs. Scull*, 6 *Eng.* 325; *Cope vs. Daniel*, 9 *Dana* 415; *Clarke vs. Pigot*, 1 *Salk.* 125; *Lucas vs. Haynes, ib.* 130; *Story on Prom. Notes, p.* 149, *sec.* 133; *Story on Bills* 228, *secs.* 206, 7; 3 *Kent Com.* 89, 80; *Hubbard vs. Williamson*, 4 *Iredell* 266; *Bowie vs. Duvall*, 1 *Gill & John.* 179; *Mitchell vs. Mitchell*, 11 *Gill & John.* 388; *Barnes vs. Reynolds*, 4 *How. Miss. Rep.* 114; *Heinster vs. Rogers & Garland*, 6 *Harr. & John.* 282; *ib.* 140; *ib.* 527; 5 *ib.* 115; 3 *Misso.* 67. In the case of *Jordan vs. Thornton, &c.*, 2 *Eng.* 224, this question was not involved; and *Sterling vs. Snapp, ib.* 201, was an appeal from an *equity* court—that of a justice of the peace.

It is alleged a demand of payment was made, and issue formed upon that fact: and it is doubtful whether it was essential to aver a demand: they were bound to prove it or fail in their action; the party is bound to stand or fall by the issue. 1 *Ch. Pl.* 692, 3. A demand must, of course, be made by party entitled to receive the

money, and give vouchers—the owner or his agent. *Story P. N.*, *sec.* 246. No proof was offered of the authority of the person making the demand in this case. See *Taylor vs. Spears*, 1 *Eng.* 381.

The court admitted, in evidence to *the jury*, an *ex parte* affidavit of *one* of five parties, before suit brought, without showing that he ever saw or had custody of the instrument, or that search was made for it, or that the other parties might not have it. The averment of the loss, was a material one, and should have been proved on the trial of the cause, when the defendant would have had the benefit of a cross-examination. See *Poignard vs. Smith*, 8 *Pick.* 272; *Jackson vs. Parkhurst*, 4 *Wend.* 375.

P. TRAPNALL and S. H. HEMPSTEAD, contra. The obligation on which this suit was instituted, was for the payment of property on a specified day. It was a strict property note, and no demand was necessary on the part of the assignees ·to fix the liability of Worthington, or enable them to recover. It was the duty of the obligee to discharge it on the day, and his failure to do it, subjected him to the payment of the highest market value of the cotton. *Cockrell vs. Warner*, 14 *Ark.* 352; 3 *Cowen* 83; *Sedg. on Dam.* 497; *Elkins vs. Parkhurst*, 17 *Verm.* 105. And if a demand was necessary, there was a sufficient evidence of it, as appears by the verdict of the jury, who were the judges of the weight of the evidence to this point.

The affidavit of the loss of the convenant made by one of the plaintiffs, was admissible to establish the loss. *Digest* 814; *Kellog vs. Norris*, 5 *Eng.* 25; *Taylor vs. Riggs*, 1 *Peters* 596, *and cases cited: Greenleaf's Ev.*, sec. 349, *note 2; Cowen & Hill's notes to Phil. on Ev.*, part 1, note 122, page 138.

A blank endorsement in itself constitutes a complete and perfect transfer of the interest in the bill, and without the addition of any other words, will vest the right of action, and all other rights, in the transferee and subsequent holders. *Chitty on Bills* 229 ; *Wilkinson vs. Nicklin*, 2 *Dallas* 396; *Story on Bills* 207; *Grif-*

*forn vs. Jacobs*, 2 *Louis. Rep.* 192; *Tyler vs. Binney*, 7 *Mass.* 479; *Lovell vs. Everton*, 11 *John* 52; *Norris vs. Badger*, 6 *Cowen* 449; *Dugan vs. United States*, 3 *Wheat.* 173, 183; 15 *Mass.* 534; 9 *Dana* 415; 14 *Maine* 101; 7 *Porter R.* 175; 3 *Kent* 89. See *Sterling & Snapp vs. Bender*, 2 *Eng.* 201; *Jordan vs. Thornton*, 2 *Eng.* 230; *Bizzell vs. State Bank*, 3 *Eng.* 460; *Magruder vs. Slater*, 7 *Eng.* 171; *Owen vs. Lavine*, 14 *Ark.* 392.

Worthington took a regular deed with convenants of warranty and seizin; and it is perfectly well settled that a party must rely on his covenants, and while he is in possession cannot resist the payment of the purchase money in a suit at law, on the ground of failure of title. *Bumpus vs. Platner*, 1 *John. Ch. R.* 213; *Abbot vs. Allen*, 2 *J. C. R.* 519; *Gilpin vs. Smith*, 11 *S. & M.* 129; *Davis vs. Tarwater*, 15 *Arks.*

Mr. Justice Scorr delivered the opinion of the Court.

This was an action of covenant, instituted, in the Chicot Circuit Court, by the survivors of the firm of E. Curd & Co. It was upon a covenant of Worthington to Abner Johnson, dated the 1st of February, 1840, payable the 15th January, 1850, for two hundred and fity bales of cotton, with provisions as to the quality of the cotton and weight of the bales.

It was alleged that Johnson, on the 7th of January, 1845, endorsed this covenant, in blank, to the firm of E. Curd & Co., and then delivered it to them; that the covenant and the endorsement were lost, and that, on the 15th of January, 1850, the 250 bales were demanded of Worthington, at his plantation and residence, by the plaintiff.

The defendant pleaded:

1st. That he was never notified of the assignment.

2d. That the covenant was never endorsed and delivered as alleged.

3d. That the covenant was not and is not, lost, as alleged.

4th. That the demand of the cotton was not made as alleged.

5th. That the defendant performed all the stipulations in the

covenant, and paid the cotton therein mentioned, according to its tenor.

6th. That the covenant was not endorsed and delivered to the plaintiff as alleged, but was so endorsed and delivered to a person unknown, and plaintiffs did not derive their title thereto directly from Johnson.

7th. That the covenant, together with others, was made to Johnson, by the defendant, to secure the purchase money of sundry tracts of land described, which were contracted to be conveyed by Johnson, to defendant, in absolute property, free of all liens and incumbrances, and that Johnson conveyed the same by deed with covenants of seizin, freedom from incumbrance, and for quiet enjoyment. That Johnson had not in fact a fee free from incumbrance, but, long time before had conveyed a portion of said land, which are described, to the Real Estate Bank, to secure stock therein, to the amount of thirty thousand dollars with interest, which remains wholly due and unpaid. That, in said sale and purchase, the lands in said mortgage specified, were estimated at, and were in fact worth, the same sum per acre, as that fixed by said contract for the other lands. That he has paid much the larger portion of the purchase money agreed to be given for the entire lands, and that the amount of money and interest due on the mortgage, greatly exceeds the balance unpaid on account of said purchase, including the covenant sued on, and therefore the consideration of said contract—the getting a clear and unencumbered title to all the lands—has failed.

8th. That the consideration of the covenant has failed, in that it was given on a contract that Johnson should convey the lands and plantation in fee, clear of incumbrance, when, in fact, a portion of the lands, which constituted the same, was encumbered much more than the amount of the covenant sued on, and that that incumbrance still exists to a much greater amount than is still unpaid—including the covenant sued on—of the whole purchase money. And that the encumbered lands were a material inducement to the purchase, and were estimated in the

same, as of as much value as the entire unpaid purchase money.

9th. That the plaintiffs never received the covenant in the usual course of trade, or on any legal or valid consideration, but won it on the result of the Presidential election, in the year, 1844, and it was delivered to them in payment of said bet, and upon no other consideration.

The 7th, 8th and 9th pleas were verified by the affidavit of the defendant.

Demurrers were interposed and sustained to the 1st, 6th, 7th, 8th, and 9th pleas. The second plea was stricken out on motion of the plaintiff, to which the defendant excepted; and his bill of exceptions was signed and sealed. And issues were taken on the 3rd, 4th and 5th pleas.

At a subsequent term, in pursuance of leave previously granted to the defendant to file additional pleas, he offered to file three additional ones, as follows, to wit:

1st. That the assignment and endorsement were not and are not lost.

2d. That plaintiffs never had possession of the covenant.

3d. That neither Johnson, nor any one else whomsoever, ever delivered said covenant to the plaintiffs, with a blank endorsement thereon.

But the plaintiffs objected, and the court sustained the objection as to the 2d and 3d additional pleas, and refusing to permit them to be filed, the defendant took his bill of exceptions. The first however was allowed to be filed, and issue was taken upon it.

Upon these four issues, the case was tried by a jury, who found for the plaintiffs, and assessed their damages at the sum of $11,-647; and judgment was rendered accordingly.

The defendant moved for a new trial, and the grounds of his motion were the following, to wit:

1st. That the jury found contrary to law and evidence.

2d. That the verdict was not justified by the evidence.

63BB

3d. That the court erred in admitting the *ex parte* affidavit of one of the plaintiffs.

4th. That the court refused to exclude certain illegal evidence, although moved to do so by the defendant.

5th. That the court erred in giving certain instructions, on motion of the plaintiff, against the objection of the defendant.

6th. That the court erred in refusing to give, and in modifying, certain instructions moved by the defendant.

7th. That the jury disregarded, and found contrary to the instructions.

8th. That the damages were excessive.

9th. That the plaintiff showed no right of recovery.

10th. That the verdict, "at first blush, would shock the sense of justice of any impartial person."

11th. That the court admitted to be read in evidence the deposition of Beekman.

This motion was overruled, and the defendant excepting, took his bill of exceptions, embodying all the evidence given or offered by either party, all the instructions given, asked for and refused, and modified, and the grounds of the motion for new trial, and appealed to this court.

The evidence was the following, to wit:

1st. The affidavit of Nathan Bowman, made before the clerk of the Chicot Circuit Court, on the 30th of April, 1850, written on the same sheet of paper that contains the declaration. This appears to have been filed the 1st of June next thereafter. In this affidavit, a copy of the covenant is set out, and the affidavit states, that the original was endorsed by Johnson, on the 7th of January, 1845, to E. Curd & Co., and then delivered by him, and that, since that time, in the month of January, 1848, it was lost, and has not since been found.

2d. The deposition of Beekman was read. He stated that he had often seen the covenant in question; that it was payable, according to his best recollection, in January, 1850. He did not recollect its date. He saw it in the possession of different members of

the firm of E. Curd & Co., in the year 1845; recollects distinctly that he saw it in the possession of Edward Curd and Edmund H. Curd, both of whom were members of the firm. That it was endorsed in blank on the back by Abner Johnson, that is, the name "A. Johnson," was so written thereon in his own hand writing. That, to the best of his recollection, there was a scroll representing a seal on the bond annexed to the name of the defendant, but none to the name of A. Johnson, on the back. That said firm of E. Curd & Co., was composed of Edward Curd, Rufus R. Williams, Richard Nicholls, Nathan Bowman, and Edmund H. Curd, all of whom were yet living, except the last named.

To all of which evidence, the defendant objected generally, but was overruled, and he took his bill of exceptions.

Then, by consent, the plaintiffs read in evidence the depositions of Peter Rowlet and A. H. Davies. The former stated, that, on the 15th day of January, 1850, he went to the residence of the defendant, in Chicot county, with a "gentleman, who demanded of him two hundred and fifty bales of cotton, on the lost Abner Johnson note, and that the defendant refused to deliver the cotton, unless they would satisfy the mortgage. That the cotton was demanded, by the gentleman, on the note which had been assigned by Abner Johnson to a firm; the names of the firm, I do not know." And that the defendant admitted that he had sold cotton that year at ten cents per pound. And that the demand was made at the residence and plantation of the defendant.

Davies stated that the defendant, in the year 1849, made a crop of cotton, on the plantation occupied by him, of 250 bales, or more; and, from the quantity of cotton usually made by him, that the witness had no doubt but that he had 250 bales packed and ready for market, by or before the 15th of January, 1850; that his impression was, that "good fair or fine" cotton was worth something over ten cents per pound; and "middling," from 9 to 10 cents, from the 1st to the 15th January, 1850.

It seems, also, from the bill of exceptions, that, on the part of the defendant, one of the plaintiffs, with his consent, was sworn

as a witness, and asked whether or not he had in his possession a copy of the covenant in suit, taken from the original when in existence. And, admitting he had such copy, he refused to produce it without first tearing off what was written on the same paper with the copy in addition thereto, which was objected to by the defendant, and the plaintiff persisting in his refusal, unless the matter, written on the paper in addition to the copy, was torn off, that copy was not produced and read. And this was all the evidence given or offered by either party.

On the part of the plaintiffs, against the objection of the defendant, the court instructed the jury:

1st. That the *ex parte* affidavit of Bowman, one of the plaintiffs, was competent evidence of the loss of the instrument sued on.

2d. That, under the issues in the cause, if the jury are satisfied from the testimony, as to the loss of the instrument, and that it was executed by the defendant to Johnson, and by him endorsed to the plaintiffs, and that the plaintiffs, by one of themselves or an agent, demanded the cotton of the defendant at his plantation, on the 15th day of January, 1850, and he refused to pay it, they must find for the plaintiffs.

3d. If the jury find for the plaintiffs, they must find the value of the 250 bales of cotton on the 15th day of January, 1850, and may find *ten* per cent. interest on the amount up to this date.

The defendant moved for thirteen instructions; some of which the court modified and gave, gave entire, and others refused, as follows: The court instructed:

1st. Under the issue on the plea denying the loss of the instrument sued on, plaintiffs are not entitled to recover unless they have proven, and shown to the jury, that the instrument is and was *lost*, before suit brought.

In this instruction, the court inserted the word "lost," in lieu of the words, "totally destroyed, or unless, after diligent and thorough search in all places and with all persons with whom it would likely be, it has been shown to be lost, so that the original could not be had."

2d. That the jury are the sole judges of the credit and weight of the testimony, and have the right, and it is their duty, if, under the circumstances, they disbelieve the statements of any witness or party, they can wholly disregard such testimony or statement.

3d. That the plaintiffs have no right to recover in this cause unless, on the day the instrument sued on fell due, they have *distinctly* proven to the satisfaction of the jury, that they, or some one of them, by himself or agent, who is, and was proven to be the agent and duly authorized by plaintiffs, or some one of them for that purpose, demanded, in that capacity, of defendant, at the residence and plantation of defendant, the cotton sued for.

These two instructions were given as asked, except that the word "distinctly," in italics, was stricken out by the court.

The 4th was refused entire. It was: That said plaintiffs are not entitled to recover in this action, unless they have proven that, before the loss of said instrument, the pretended assignment was filled up, payable to themselves.

5th. That an instrument, such as is described in the declaration, endorsed in blank, is negotiable by delivery, and any person having or hereafter having the same in possession, would have a *prima facie* showing of title thereto and right to recover thereon, and right to fill up the blank assignment to himself.

6th. That, when a party seeks to recover upon an instrument, alleging it lost, such as is supposed in the last instruction, clear and satisfactory evidence of loss or destruction of the instrument, should be given to the jury, before they would be warranted in finding for the plaintiffs.

7th. It is no evidence of the agency of one party for another, where the agent merely says he is so, and no evidence is adduced that the principal appointed him such agent.

8th. The plaintiffs are not entitled to recover in this action, unless they have proven to the satisfaction of the jury that the identical instrument sued on, was lost or destroyed, and that the instrument lost was executed and delivered by defendant and endorsed by Abner Johnson, each by their proper hand writing,

and such lost instrument corresponded strictly with the description given thereof in the declaration.

The *fifth*, *sixth*, *seventh* and *eighth* instructions, were *given* entire.

9th. *That the jury should not find for plaintiffs as to the loss of said instrument, without clear, distinct and satisfactory proof of the loss*, and the strictness of the proof required of loss or destruction, should be greater in proportion as there may be circumstances in the case tending to induce the jury to believe the note sued on may be withheld by plaintiffs from improper motives, when, in truth, it might be produced, or thus voluntarily made way with it.

10th. Where a party, who swears to the loss of an instrument, is shown to have sworn on information, derived from others, this should weigh strongly against his credit, and besides where there is no showing that the party alleged to have lost the instrument, could not be had or sworn, such testimony is mere hearsay, and is not competent to prove the loss at all.

The entire 10th instruction asked, was refused, and all of the ninth, except that portion of the first clause which is in italics, which was given.

11th. That the affidavit of Bowman, read in evidence to the jury, is not and cannot be considered or used by the jury, as any evidence at all of the existence, contents, date or time of payment of the instrument sued on: or, indeed, any evidence at all of any thing except the loss or destruction of the instrument. This instruction was given entire.

12th. That, among other facts and circumstances, to be considered by the jury, in weighing the testimony and arriving at a proper judgment, the jury may and should consider the acts of said plaintiffs and their attorneys or agents, in the progress of the trial, in withholding from the jury any copy or other written evidence of the contents of the pretended lost instrument, or any evidence of the loss of instruments, of a more certain or satisfactory character than the mere random statements or recollection

of a witness in regard to the contents. And any such conduct should discredit and weaken the effect of any evidence, coming from plaintiffs, adduced to show the contents or loss of the instrument. This instruction was also refused.

13th. The plaintiffs are not entitled to recover in this action, unless they have proven, to the satisfaction of the jury, that the pretended instrument sued on was *bona fide* assigned and negotiated to the plaintiffs and their deceased partner, and they were the owners thereof, and entitled to its proceeds. This instruction was given entire.

Both upon the pleadings and the instructions, the exceptions reserved distinctly raise the question, whether or not the plaintiffs below were entitled to maintain their action upon the blank endorsement and delivery of the instrument sued on, which they aver in their declaration.

Being a writing obligatory, payable in property, and, for that reason, not negotiable, upon the principle that promissory notes and other contracts in writing, payable in money, *but on a contingency*, were held in *Owen vs. Lavine*, (14 *Ark.* 389,) not to be so, it was, nevertheless, assignable under our statute, like such contracts were, in that case, declared to be, so as to vest a right of action in the assignee against the maker or obligor.

In the cases of *Walker, adm., et al. vs. Johnson et al.*, 13 *Ark. R.* 522; *Ellis vs. Dunham*, 14 *Ark.* 129; *Levi vs. Drew*, 14 *Ark. R.* 334; *Owen vs. Lavine,* 14 *Ark. R.* 389; and of *Anderson vs. Yell,* 15 *Ark. R.* 9; it has been shown, in entire conformity with the current of our previous cases, that our statute of assignments, in its nature, is not only such, in the sense in which such statutes, irrespective of the law merchant, have been expounded as statutes of assignments, in Virginia, Kentucky, and most of the western States, but that it also, at the same time, adopts the law merchant in a qualified form, (*Walker, ad., et. al. vs. Johnson et. al.*, 13 *Ark. R.* 530,) not only as to bills of exchange and promissory notes; but also as to all other "instruments in writing assignable by law for the payment of *money alone*," at the elec-

tion of the holder of any such paper. *Dig., chap.* 15, *p,* 163, *sec.* 9.

And, in quite a number of other cases, in analogy to the law merchant, its rules respecting the rights and remedies of the holder of bills, notes and writings obligatory indiscriminately, when for the payment of money, the manner of making the endorsement, and the time and mode of presentment, and notice, have been enforced. *Buckner vs. R. E. Bank,* 5 *Ark. R.* 541; *Sterling & Snapp vs. Bender,* 2 *Eng. R.* 202; *Ruddell & McGuire vs. Walker, ib.* 457; *Jordan vs. Thornton, use of Newborn, ib.* 224; *Watson vs. Higgins, ib.* 491; *Jones vs. Robinson,* 3 *Eng. R.* 480; *Eidson vs. Frazier,* 4 *Eng. R.* 219; *Weaver vs. Caldwell's Exr., ib.* 339; *Feimster vs. Smith,* 5 *Ark. R.* 495; *Jones vs. Robinson,* 6 *Ark. R.* 504; *Martin et. al. vs. Warren, ib.* 285; *Edwards vs. Scull, ib.* 325; *Magruder vs. Slater,* 7 *Eng. R.* 171; *Smith vs. Capers,* 13 *Ark. R.* 9; *Sanger vs. Sumner, ib.* 280; *Sumpter vs. Tucker,* 14 *Ark. R.* 185.

Several of these cases were upon writings obligatory for the payment of money absolutely, where the endorsement was *blank.* The case of *Weaver vs. Caldwell's ex.,* was one of this kind, where the defendant was allowed, under the statute, to fix the assignment on such day as was most to his advantage to let in his set off.

And, in the case of *Watson vs. Higgins,* which was on a writing obligatory, upon the defendant pleading that the plaintiff had endorsed and assigned said writing obligatory, and was no longer the legal owner of it, but failing to set out the *name* of the *assignee,* the court held that the legal presumption was, that the assignment was in blank, and, this being so, the plea was bad, because "delivery" was not also averred: the court remarking that, "to constitute a valid transfer by endorsement or assignment, so as to divest the obligee or payee of his legal right and interest in any instrument made assignable by law, and to vest the same in the assignee or endorsee, there must be an assignor and assignee, an assignment, or endorsement of the instrument, which is consum-

mated by delivery." 2 *Eng. R.* 491. *Jordan vs. Thornton, use of Mewborn, Magruder vs. Slater,* and *Sanger vs. Sumner,* were all upon writings obligatory endorsed in blank—the two former entirely so, and the latter blank as to the date only, of the assignment. In the latter case, the court remarked, "the assignment was not the less valid because there was no date to it; because, if made in blank, the simple endorsement and delivery of the obligation would have constituted a valid assignment, and have vested in the holder of such obligation the right, at any time before or after suit brought, to fill up the blank, and thereby to furnish evidence of the specific character of such right." *Sanger vs. Sumner,* 13 *Ark. R.* 283.

But no case has heretofore come up, where any question, as to the mode or effect of an endorsement, has arisen upon a contract payable in property like this before us, or upon any contract for money payable upon a contingency, which, as we have seen, rests upon the same basis.

In Kentucky, the statute of that State authorizing the assignment of bonds, bills and promissory notes, but subjecting them, in the hands of any assignee, to all equities, which the obligor, maker, or party, primarily liable, may have against the original assignor previous to notice of assignment, is held, by the courts of that State, not to make such instrument commercial paper. And hence, the commercial law is not there resorted to either for determining the extent or ground of the liabilities of the original parties, or in fixing the relations between successive holders or assignees, or the measure of diligence to be used by any assignee. But, for all such, the principles of the common law are mainly invoked when the statute is silent.

Nevertheless, in the entire silence of their statute, as to the *form* and *mode* of the assignment, which it authorizes, their courts have thought it most consistent, with good sense and sound reason, to look to the commercial law, as furnishing the strongest analogies upon the point. And, accordingly, in several adjudications, the rule of the commercial law, to this extent, has been

64BB

adopted and applied to assignments under the statute. *Reese vs. Walton*, 4 *B. Monroe* 510; *Odenheimer, &c. vs. Douglass et. al.*, 5 *B Monroe* 109; *Hunt vs. Armstrong's ad. & heirs*, 5 *B. Monroe* 400. In one of these cases, the court say, that "the delivery of a note, with the blank endorsement of the person having the legal title to it, deprives him of his interest, authorizes the assignment to be filled up to any subsequent holder, with the effect of vesting in him the legal title, and with the further effect of evidencing, *prima facie*, a contract of assignment between him and the blank endorser. *Reese vs. Walton*, 4 *B. Monroe R.* 511.

And it would seem from "*Tucker's Commentaries on the Laws of Virginia*," (*book* 2, *p.* 334, *title Assignments*,) that, from the same views upon the statute of that State authorizing the assignment of all "bonds, bills or notes, for the payment of money or tobacco, and all writings obligatory whatsoever," a like doctrine has been established in that State. This writer, when commenting upon the assignment of these contracts, indiscriminately, says, "How is this assignment made? It is usually by an endorsement on the back of the writing, with the name of the party subscribed, declaring the assignment. The endorsement of the name, however, will suffice, as the holder may afterwards write the assignment above it, (5 *Mun.* 388, 396; 1 *Esp. R.* 31, 34; *Chitty on Bills* 32; 5 *Cranch R.* 329,) even after suit brought. 5 *Ran. R.* 326.

This doctrine, resting alone upon the foundations of analogy and reason, in these two States—the respective statutes, to which it has been applied, making no reference at all to the commercial law—with much more reason, can it be adopted in this State, and applied to our statute indiscriminately, where such evident reference is made to the commercial law in the 9th section of the act, as to contracts payable in "money alone," and where, in other sections, so many terms are used as to all the contracts indiscriminately, that are made assignable, the meaning of which can be found no where else than in that law.

Nor is there much, in any of the previous decisions of this

court, to the contrary, while their main current, as we have seen, is in favor of it.

In the case of *Block vs. Walker*, 2 *Ark. R.* 8, the point decided was, that, under the statute, the assignee must sue in his own name, because he had acquired the legal title, and he would not be allowed, by suing in the name of the assignor to his use, to deprive the defendant of any defence he might have against the assignee. In doing so, it was not necessary to decide that the legal title could be acquired only in a particular mode. Nevertheless, the court, after going at large into a construction of the statute, and ultimately taking up the question of the assignee's right to strike out and erase an endorsement, and citing some supposed rule of the commercial law as to this, when the endorsement is full, and admitting that they were strictly applicable to bills of exchange, say "if they are true as to them, they certainly will hold good as to assignable instruments, under our statute, which do not vest by an endorsement in blank and delivery, but by being transferred, endorsed and assigned over to the assignee." Without questioning the accuracy of the citation of these supposed rules, by any enquiry whether the commercial law will compel a party to set up a derivative title in *any case*, except for the protection of innocent persons, who may have acquired an equity, while the paper was out in circulation and in their hands, (see *Martin et al. vs. Warren*, 6 *Eng. R.* 287, as to this point, when the endorsement is in blank,) it is manifest that no question, as to the effect of any blank endorsement, was involved in that, that was decided; and that if the point decided is to be sustained by the analogies of the commercial law, that then these are, equally, to the full against the remark of the court as to blank endorsement and delivery.

In the case of *Buckner vs. Greenwood*, (1 *Eng. R.* 200,) although the judge, delivering the opinion of the court, indulged in several latitudinous remarks which were not called for by the case before the court, the only material point decided was, that, under our statute, a party cannot recover in his own name upon

a bond, unless he is the obligee, or has acquired the legal interest in it through the obligee by assignment. In that case, the bond was payable to "bearer" merely, and the plaintiff sued as obligee, alleging that it was made by the defendants and delivered to him. The bond was endorsed, in blank, by the party to whom, it turned out in proof, it was executed; but this endorsement cut no figure at all in the case, and was not remarked upon in any way. The court say, "In this case, Greenwood was not the obligee, to whom the bond was originally given; it was proven, upon trial, that it was executed and delivered to a different person, and this fact was admitted by the plaintiff himself; nor does he claim the interest in, or sue upon, the bond, as assignee. Having sued upon the bond, as obligee, it was essential to the sustaining of his action, to prove its execution and delivery to him, if denied, which was done by the defendant's plea; but, so far from establishing the fact of delivery to him, the reverse was proven by the defendant, and was admitted by the plaintiff. For *these reasons*, the judgment is erroneous, and must be reversed."

The case of *Edwards vs. Scull*, (6 *Eng. R.* 325,) decides nothing beyond the point, that a blank endorsement may be filled up at any time before or during the trial.

Adopting, then, the rule of the commercial law, as to the form and mode of making the assignment as to contracts payable in property, or in money upon a contingency, as has heretofore been substantially done as to all other contracts made assignable by our statute, the remaining question, on this point, is, whether or not, according to that law, the blank endorsement and delivery of the instrument constitutes such a transfer of the interest in the paper as to vest in the transferee the right of action and recovery. And, as to this, although there is some want of harmony in the authorities—indeed a direct conflict to some extent—by far the greater weight affirms the proposition distinctly. *Chewning et al. vs. Gatewood*, 5 *How. Miss. R.* 556; *McDonald vs. Bailey*, 14 *Maine R.* 103; *Gilliam vs. State Bank of Illinois*, 2 *Scam. R.* 247; *Riggs vs. Andrews*, &c., 8 *Ala. R.* 631; *Chitty*

*on Bills* 229; *Grifforn vs. Jacobs,* 2 *Lou. R.* 192; *Tyler vs. Binney,* 7 *Mass. R.* 479; *Lovell vs. Everton,* 11 *John. R.* 52; *Dugan vs. U. States,* 5 *Wheaton R.* 173, 183; *Denton vs. Dupessis,* 12 *Lou. R.* 83. 93; *Sprigg vs. Cunny's heirs,* 29 *Martin's Lou. R.* 253; 3 *Kent* 89; *Story on Bills* 207.

It follows then, that the declaration, to which the demurrer to the pleas runs back, must be held sufficient, and that there was no error in the refusal of the court to give the 4th instruction asked for on the part of the defendant below.

And, inasmuch as our holding the declaration good, removes the only ground of complaint, urged, in this court, against the action of the court below upon the several pleas demurred to, it will be unnecessary to notice any of these.

As to the plea stricken out, and the two additional ones refused to be filed, there is clearly no error.

With regard to the demand, none was necessary, as was decided by this court, on a like contract, in the case of *Cockrell vs. Warner,* 14 *Ark.* 352. But, conceding, as is argued, that, inasmuch as one was alleged, the party has to stand or fall by it, we think there is sufficient evidence in the record to have authorized the jury to find one. True, on some points as to the demand, the evidence is indefinite and vague, but the jury were the exclusive judges of its weight. Worthington made no objection, when the demand was made, on the score of want of authority; but placed his refusal on another ground specifically.

With regard to the affidavit of one of the plaintiffs below, which was read to the jury, to prove the loss of the covenant, Judge MARSHALL says, in *Taylor vs. Riggs,* 1 *Peters R.* 596, "As the fact of loss is generally known to the party himself, there would seem to be a necessity for receiving his affidavit in support of it." And, in *Kellogg & Co. vs. Norris,* 5 *Eng. R.* 18, this court held, upon a construction of our statute, that an *ex parte* affidavit was competent for this purpose, the opposite party, under such circumstances, having the privilege to be examined on oath to disprove the loss, if he can. That this is a correct in-

terpretation of the will of the legislature, may be further forti-
fied by the provision for suits on lost instruments before justices
of the peace; where it is expressly provided that the plaintiff may
"file with the justice the affidavit of himself, or some other credi-
table person, stating such loss or destruction, and setting forth
the substance of such instrument," and, in a subsequent section,
making a like provision for the examination of the opposite party
on oath, to disprove the loss or destruction. (*Dig., ch.* 95, *secs.*
26, 27 *and* 28.)

The objection to the reading of the deposition of Beekman, was
not specific, but general. It seems regular upon its face. If there
be really any ground of objection, and it had been pointed out in
the court below, the party offering the deposition might perhaps
have obviated the objection, or at any rate could have had the
privilege of taking a non-suit, if he had deemed it proper. To
notice objections that are, for the first time, to be discovered in
this court, would work surprise and injustice.

With regard to the instructions that were given to the jury,
when considered all together, we consider them as favorable to
Worthington, as he had any right to ask; and full as stringent
against the plaintiff below, as could have been tolerated.

The objection to the third instruction, given on the part of the
plaintiff below, that the jury might compute interest at the rate
of *ten* per centum, has been obviated by an agreement of record
to the effect that this was a clerical mistake in the transcript,
and that the rate instructed was in fact but *six* per centum.

Nor do we think there was any error prejudicial to the defen-
dant, either in the modifications of the instructions which he
asked entire, or in the refusal to give the 10th and 12th instruc-
tions, which he moved.

Without a modification of the 1st and 9th instructions, and the
refusal of the 10th, they were well calculated to mislead the jury
as to the weight to be given to the affidavit of the loss, which
was clearly competent evidence for them to consider on this
point; and, besides, there was no evidence in, upon which to base

the latter clause of the 9th, as to the plaintiff's improperly withholding the covenant, and so much of the 10th as assumed that this affidavit was made upon information derived from others. They had already been told, in very distinct terms, that this affidavit was evidence only of the loss, and, if they did not believe it, they could disregard it entirely.

There was nothing in the record, upon which the 12th instruction asked and refused, could be based, except that one of the plaintiffs had refused to produce a copy of the covenant, taken as he said, from the original, before its loss, unless upon the terms of first tearing off what was written on the same sheet of paper in addition to the copy. In the absence of all proof, that his additional matter had any connection with the copy of the covenant, we think the instruction in question would have been improper.

Finding no error, and that the verdict and judgment are sustained by the law and evidence, we think the judgment ought to be affirmed.