254            CASES IN THE SUPREME COURT

Key et al. vs. Henson as ad.            [JANUARY

## KEY ET AL. VS. HENSON AS AD.

A defendant may recoup the damages sustained by failure of consideration, as well where the action is brought upon an instrument given to secure the payment of the purchase money, on a contract of bargain and sale, as where it is brought upon the original contract.

A court of law can properly afford no relief, upon the principle of recoupment, where the failure of consideration is not of the quantity or quality of land purchased and sold, but of the title, unless amounting to an entire failure of the whole consideration—the party's remedy is in equity. (*Wheat vs. Dotson*, 7 *Eng. Rep.* 699; *McDaniel vs. Grace*, 15 *Ark.* 487.)

In an action upon a promissory note, the defendants pleaded that the consideration of the note was the purchase money of a tract of land bought of W. & T., by consent of plaintiff's intestate, who held an incumbrance on the land: that by consent of all the parties, the note sued on (being for part of the consideration,) was given to plaintiff's intestate, he promising to release his incumbrance, which he, and his administrator since his death, had refused to do: HELD, That the plea is not good by way of recoupment; nor in bar of the action—the contracts to release the incumbrance and to pay the purchase money being independent covenants, and the former not a condition precedent.

### *Appeal from Dallas Circuit Court.*

The Hon. THEODORIC F. SORRELLS, Circuit Judge.

WATKINS & GALLAGHER, for the appellants.

COMPTON & SMITH, contra.

Mr. Justice SCOTT, delivered the opinion of the Court.

This was an action of debt, on a promissory note, dated the 16th December, 1852, and payable to James Hudson, on the 25th day of December, 1853. The plaintiff sued as administrator of

Hudson. The defendant interposed a special plea, of which the following is a copy, *to wit:*

"Comes the said defendant by attorney, and says *actio non,* &c., because he says that the consideration of the note sued on herein has entirely failed, in this, *to wit*: On the 11th day of March, A. D. 1851, John Hutchinson and James Hudson sold to Benjamin W. Winstead and James Tate, the south-west qr. of the west qr. of section 3, township 9 south, range 17 west, in Dallas county, on which a saw-mill is erected, for the ——: this defendant further avers that the said Benjamin W. and James Tate, in order to secure the payment of the purchase money due for said tract, and for certain other purposes, executed a certain deed of trust to one A. H. Phillips, in and upon said tract of land, for the benefit of the said John Hutchinson and James Hudson, and the defendant avers, that afterwards, *to wit:* on the 16th December, A. D. 1852, the said defendants, by and with the consent of the said James Hudson, purchased of the said Winstead and Tate, said tract of land, for the sum of $1100, and executed their said notes in payment therefor, one of which was the note herein sued, and which was, by consent of all the parties, taken in the name of James Hudson, the said James Hudson then and there agreeing with the said defendants, that if they should give their said notes for said tract of land, he would immediately assign to said defendants, all his interest, right and title to the property so conveyed in said deed of trust: and these defendants aver that they have paid all of the consideration money (or note given for the said consideration money,) for said certain tract of land, with the exception of the note herein sued on, and two other small notes, one for $100, and the other for $48; and this defendant avers that the said James Hudson, previous to his death, would not, and did not execute to these defendants, or to either, any release or assignment of said James Hudson's interest in the property conveyed in said deed of trust, but so to do, wholly neglected and refused, although these defendants aver that the same was a part of the consideration of all the said notes, amounting to said sum of eleven hun-

dred dollars, and that the plaintiff in this suit, as administrator of said James, has, since his death, refused to assign the interest of the said James Hudson, in said property so conveyed in said deed of trust, and still refuses so to do: and these defendants aver that, on account of such refusal of the said James, during *in* his lifetime, and of the said G. W. Henson, as administrator, to make such assignment, and the still existing incumbrance on the same, in the favor of said administrator, diminishes the value of the title to said tract of land of the said defendants, and in part payment whereof, the note herein sued on was given as aforesaid, to at least the full amount of said note, and said other two notes, wherefore this defendant avers that he is entitled to recoup the amount of said notes, and that the consideration thereof has entirely failed, and this he is ready to verify, wherefore he prays judgment, &c.

This plea was regularly verified by the affidavit of one of the defendants, filed with the plea. The court sustained the demurrer, and the defendant declining to plead further, the court rendered final judgment for the plaintiff, and the defendant appealed to this court.

The only question is, as to the sufficiency of the plea.

We shall first endeavor to ascertain, from a scrutiny of the plea, what was the consideration of the note, upon which the action is based. The pleader, after premising that Hutchinson and Hudson had sold to Winstead and Tate, a certain quarter section of land, on which a saw-mill was erected, and that the latter, to secure the purchase money therefor, and for other purposes, had executed a deed in trust for said tract of land, to one Phillips, for the benefit of the former, proceeds to aver that, "afterwards, *to wit:* on the 16th of December, A. D. 1852, the said defendants, by and with the consent of the said James Hudson, purchased of the said Winstead and Tate, said tract of land for the sum of $1100, and executed their said notes in payment therefor, one of which was the note herein sued, and which was, by consent of all the parties, taken in the name of James

Hudson; the said James Hudson then and there agreeing with said defendants, that if they should give their said notes for said tract of land, he would immediately assign to said defendants, all his right, interest and title to the property so conveyed in said deed of trust.

In the first place, it is to be remarked, that, in the averment that "the said defendants, by. and with the consent of the said James Hudson, purchased of the said Winstead and Tate, said tract of land, for the sum of $1100, and executed their said notes in pay-. ment therefor, one of which was the note herein sued, and which was, by consent of all the parties, taken in the name of James Hudson," there is a distinct statement, that the note sued on was one of those that were executed in part payment of the $1100 for which the defendants purchased the land in question, from Winstead and Tate. In the next place, it is to be remarked, that upon the grammatical construction, there is a ground of inference that *all of the notes* executed by the defendants in payment of the $1100, were not executed in the name of James Hudson, but only the one in suit, or some number of them less than the whole. 2 *Parsons on Cont.* 25.

In the next place, the averment that, "the said James Hudson, then and there agreeing with the said defendants, that, if they should give their said notes for said tract of land, he would immediately assign to said defendants all his right, interest and title to the property so conveyed in said deed of trust," there is a distinct allegation, that the promise of Hudson equally related to all the notes that were to be given, and not to the one in suit exclusively; and that his promise related to notes that should be given by the defendant for the tract of land so purchased by them of Winstead and Tate.

The pleader then proceeds to aver that the defendants had paid all the consideration money or notes therefor, "with the exception of the note herein sued on," &c.; and that Hudson, previous to his death, did not execute any "*release* or *assignment* of his

258      CASES IN THE SUPREME COURT .

Key et al. vs. Henson as ad.      [JANUARY

interest" in the trust property, but refused to do so, "although these defendants aver that the same was a part of the consideration of all the said notes, amounting to said sum of eleven hundred dollars," and that, since his death, his administrator had not done so, but refused and still refuses, and finally avers that, on account of said refusals to "make such assignment and the still existing incumbrance on the same, in favor of the administrator, diminishes the title to said tract of land of the said defendants, and in part payment whereof, the note herein sued on was given as aforesaid, to at least the full amount of said note," &c.

When all these averments are considered together, it would seem impossible to avoid the conclusion, if the plea is to be taken as its own exponent, that the consideration of the note in suit was two-fold: one which moved from Winstead and Tate, which was executed; and the other, which moved from Hudson, which was executory. That which moved from Winstead and Tate, was the sale, conveyance of title to, and possession of the quarter section of land described; the pleader expressly averring that the failure on the part of Hudson and his representative, "diminishes the title to said tract of land of said defendants;" and it must be intended that they are in possession of it, as there is no averment of their eviction from it. That which moved from Hudson was his promise that he would, immediately, upon the execution of the notes by the defendants, for the purchase money of the land bought by them from Winstead and Tate, assign to them all his interest, right and title to the property conveyed in the deed of trust.

And, if the plea is to be taken as its own exponent, it would seem to be equally clear, that it affords no ground of any plausible inference, that the sole consideration of the note in suit was the promise of Hudson. And such an inference would be repugnant to the whole drift of the plea as it now stands. Hence, if, in addition to what it now contains, there was an express averment to that effect, the plea would fall for repugnancy in matter

of substance in thus neutralizing allegations touching the vital question in the case made by the plea. *Gould's Plead.*, *ch.* 3, *secs.* 172, 173.

With this understanding as to the consideration of the note sued on, we shall, in the first place, consider the plea as one setting up matter for recoupment. And such it was evidently designed to be by the pleader.

In the first place, then, it may be remarked, that it is no objection to the defence, in this aspect, that the suit is not upon the original contract of sale, but upon a note given for the purchase money thereof. The promise of the defendants to pay the purchase money has but undergone the modification of being put into the form of a written promise, the basis of which latter was wide enough to include the contemporaneous mutual stipulation in the same contract of sale, on the part of Hudson, that he would release and assign to the promissors, his incumbrance upon the subject of the purchase, in part consideration of which purchase the written promise was made. Hence, the attempt to enforce this written promise, is, in effect, but an effort to enforce the original contract of sale and purchase, and the questions arising are to be settled in the same manner as if this action was in form upon that contract.

The breach complained of, for which recoupment was sought by the defendants, was that of the stipulation, on the part of Hudson, that he would release and assign his incumbrance to them.

It is undoubtedly true, that there can be no recoupment, by setting up the breach of an independent contract, on the part of the complainant, or any other person. But this is not the case here. Here, there were contemporaneous mutual stipulations between these parties, all relating to the same subject matter and all uniting in one contract of sale and purchase. And there can be no difference, in principle, whether the whole transactions were included in one written instrument setting forth the cross-stipulations of each party for himself, or whether it takes the

form of a separate and distinct undertaking of each party, or that the undertaking of one or more parties has been reduced to writing, while the engagement of the other remains in parol. In either case, the substance of the matter remains the same.

Here, although each of these three parties stipulated but for himself, Hudson was a party as well as Winstead and Tate, and, as an inducement for the vendees to make the purchase and execute their notes for the purchase money, he stipulated, on his part, that, if they should do so, he would release to them his incumbrance upon the land. And, although this he did with the consent of Winstead and Tate, they became no further responsible for his stipulation, than, in so far as they have necessarily become so by having been made, by the terms of the sale of contract and purchase, the substantial promisees of the purchase money for the whole sale—the consideration for which, so far as the promissors are concerned, was, as well the land sold to them by Winstead and Tate, as the stipulation on the part of Hudson, that he would release his incumbrance upon it. And they were such substantial promises for the *whole consideration money*, although, in point of fact, one of the notes for a part of the same was, by consent of all the parties, made payable to James Hudson. And in this character, and to the extent of the value of Hudson's incumbrance, they were liable to the vendees, through the legal right of these vendees to set up the failure of Hudson to comply with his stipulation, as a partial failure of consideration of their own promises to pay the purchase money. Thus, the stipulations on the part of Hudson, so far as the contract between Winstead and Tate and their vendees is concerned, were not an independent contract, but one of the stipulations of the contract of sale and purchase, by which one party sold, and the other bought the land in question.

So long as this incumbrance remained unremoved, it continued a blemish upon the defendants' title to the land, derived by them from Winstead and Tate, and under the facts set up in the plea, constituted a failure of so much of the consideration of the note

in suit, as was based upon Hudson's stipulation to release and assign to the defendant his incumbrance. But the nature of this failure was not that of a failure of the quantity, or of the quality of the lands purchased and sold, but of the title to it.

When this is the case, whatever may be the extent of the value of the failure, unless amounting to an entire failure of the whole consideration, it has been settled in this court, that a court of law can properly afford no relief at all. *Wheat vs. Dotson* 7 *Eng. Rep.* 699. And that where a party has gone into possession under his purchase, it can never amount to that without eviction therefrom, or its legal equivalent. *McDaniel vs. Grace*, 15 *Ark. Rep.* 487.

This limit to the scope for recoupment, in courts of law, is placed upon it, by the principles upon which they proceed, when undertaking to administer this equitable remedy. That is to say, the prevention of circuity and multiplicity of action in all those cases, where a fair opportunity can be afforded by a single action to do final and complete justice between the parties litigant, as to all matters arising out of, and connected with the contract, on which the suit is brought, by making cross demands arising thereout—whether liquidated or not—compensate each other, the balance only, if any, to be recoverable by the plaintiff.

When, however, this fair opportunity for complete adjustment of cross demands, cannot be afforded by courts of law, by reason of any inherent incapacity in these courts to administer complete justice in the premises, they have no authority to proceed at all, upon the very ground upon which they do proceed in the cases where this can be done. Hence, the denial of the jurisdiction in cases where the failure of consideration of the contract sued upon, relates to the title to real estate, and does not amount to the total failure of the entire consideration of the contract.

In such cases, courts of equity, by means of their exclusive and peculiar jurisdiction over the title to real estate, to compel its transfer to the party to whom, upon principles of equity, it

262 CASES IN THE SUPREME COURT

Key et al. vs. Henson as ad. [JANUARY

may rightfully belong, after the adjustment and removal of incumbrances upon it, are alone competent, by their constitution, to administer complete justice between the parties, and terminate all further litigation.

The case at bar is no indifferent illustration of the wisdom of this rule; since, if recoupment were allowed, under the circumstances of this case, it is certain that thereby, neither the title of the defendants would be perfected, nor litigation in the premises ended; while it is by no means certain, but that injustice would be done. Whereas, if these parties were called before a court of equity, that court could get a view of the incumbrance upon the title, ascertain its character and extent, adjust it upon principles of equity, and compel the parties to do justice to each other, as well in this adjustment, as in the transfer of title, if necessary.

But, although the plea cannot be allowed as one setting up matter of recoupment, it may not be unworty of inquiry, whether or not the matters set up in the plea may be insisted upon as a bar to the action in interposing the promise of Hudson to release and assign his incumbrance as a condition precedent to the recovery on the note in suit.

It would seem not, under the operation of a principle of law relating to the construction of covenants, as to whether they shall be held to be dependent or independent, which is usually stated thus: "Where a covenant goes only to a part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and an action may be maintained for a breach of the covenant on the part of the defendant, without averring performance in the declaration." 2 *Parsons on Cont.*, *p.* 41, *note L:* where this, and other rules are stated, and many of the cases under them are collected.

The leading case on this rule, is *Boon vs. Eyre,* 1 *H. Blackstone* 273, *note a.* The plaintiff, in that case, conveyed to the defendant the equity of redemption of a plantation in the West Indies, together with the stock of negroes upon it, in considera-

tion of £500, and an annuity of £160 per annum, for life: and covenanted that he had good title to the plantation, was lawfully possessed of the negroes, and that the defendant should quietly enjoy. The defendant covenanted, that the plaintiff well and truly performing all and every thing on his part to be performed, he, the defendant, would pay the annuity. The action was brought for the non-payment of the annuity. Plea, that the plaintiff was not, at the time of making the deed, legally possessed of the negroes, and so had not a good title to convey. Demurrer general to the plea. Lord MANSFIELD: "The distinction is very clear, where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other. But where they go only to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent. If this plea be allowed, any one negro not being the property of the plaintiff would bar the action."

Upon this case, SERGEANT WILLIAMS remarks as follows: "The whole consideration of the covenant on the part of B., the purchaser, to pay the money, was the conveyance by A., the seller, to him of the equity of redemption of the plantation, and also the stock of negroes thereon. The excuse for non-payment of the money was, that A. had broke his covenant as to *part* of the consideration, namely: the stock of negroes. But, as it appeared that A. had conveyed the equity of redemption to B., and so, had, in part executed his covenant, it would be unreasonable that B. should keep the plantation, and yet refuse payment, because A. had not good title to the negroes." Per ASHURST J., 6 *T. R.* 573: "Besides, the damages sustained by the parties would be unequal if A.'s covenant were held to be a condition precedent. *Duke of St. Albans vs. Shore*, 1 *H. Black.* 279. For A., on the one side, would lose the consideration money of the sale, but B.'s damage, on the other side, might consist, perhaps, in the loss only of a few negroes."

Premising, that as to the case presented in the plea, there can

be no difference, in the application of the principle of law cited, that there were two parties standing in the attitude of vendors, instead of one; the one selling the land, and the other, as part of the same contract of sale, stipulating to release an incumbrance; instead of one selling the land, and also, himself, in the same contract of sale, stipulating to remove an incumbrance upon it:

The mutual covenants or promises of the parties in the contract set up in the plea, may be thus stated: *that is to say*—on the one side, that Winstead and Tate would sell and convey the land, and Hudson would release his incumbrance upon it. On the other side, that Winstead and Tate and Hudson, well and truly performing all and every thing on their part to be performed, the defendants would pay the purchase money. This action is brought for the non-payment of part of the purchase money. The plea is, that Hudson has not released his incumbrance. Demurrer.

Applying the remarks of Sergeant WILLIAMS, and the judgment of Lord MANSFIELD, the result would be as follows—that is to say: The whole consideration of the promise of the defendant to pay the purchase money was the sale and conveyance of the land, and the stipulation to release the incumbrance upon it. The excuse for the non-payment of the money is, that the promise of the vendors as to part of the consideration, namely, the release of the incumbrance, has been broken. But as it appears that Winstead and Tate have conveyed the land, and so have done in part execution of the promise on the one side, it would be unreasonable that the defendants should keep the land, and yet refuse to pay the purchase money, because the incumbrance upon the land has not been released.

Besides, the damages sustained by the parties would be unequal, if Hudson's promise should be held to be a condition precedent: because Winstead and Tate and Hudson, on the one side, would lose the consideration money of the sale, but the defendant's damage on the other side might, perhaps, amount to but a small sum.

Hence, as the breach complained of goes only to a part of the consideration of the defendants promise to pay, and this breach may be paid for in damages, the measure of which would be the sum of money requisite to remove the incumbrance, the defendants have a remedy by action at law for this breach, "and shall not plead it as a condition precedent."

The same principle of law is applicable to the construction of a contract, when it may be necessary to ascertain, whether or not it contains a condition, the breach of which by one party permits the other to throw it up, and consider it as altogether null; the doctrine as to which point being generally expressed thus: "Where the clause in question goes to the whole consideration, it shall be read as a condition." "The meaning of this," (says Judge Parsons, in his work on Contracts, 2d *vol., page* 39,) "must be, that if the supposed condition covers the whole ground of the contract, and cannot be severed from it, or from any part of it, a breach of the condition is a breach of the whole contract, which gives to the other party, the right of avoiding or rescinding it altogether. But where the condition is distinctly separable, so that much of the contract may be performed on both sides, as though the condition were not there, it will be read as a stipulation, the breach of which gives an action to the injured party."

Hence, the defendants, in the case at bar, acquired no right to rescind the contract for the failure on the part of Hudson, because that failure did not cover the whole ground of their promise to pay the money; and if it had done so, and thus a legal right of rescision had arisen to them, they could not have availed themselves of it, but upon the terms prescribed by the law, for the exercise of that right; that is to say, the putting the opposite party in *statu quo*, by a return of whatever had been received under the contract.

The learned author proceeds: "But it is not safe to assert that which is sometimes said to be law, that where, in case of a breach, the party cannot have his action for damages, then the doubtful

18c

266      CASES IN THE SUPREME COURT

Key et al. vs. Henson as ad.      [JANUARY

clause must be read as a condition; because, otherwise, the party injured would be without remedy. For, 'if the reason and sense of the thing,' or the rational and fair construction of the contract leads to the rational conclusion that the parties did not agree nor intend that there should be this condition, then, there is none: and if a party be, in this way, injured and remediless, it is his own fault; in that, he neither inserted in his contract a condition, the breach of which would discharge him from all obligation, nor a stipulation, for the breach of which he might have his action."

The same remarks are, in the main, equally pertinent to the application of the principle of law in question, to covenants or promises, in determining whether they are dependent or independent.

Indeed, the learned author, in the opening paragraph of the next succeeding section, remarks: "It is a similar question—sometimes, indeed, the same question—whether covenants are mutual in such sense that each is a condition precedent to the other." *Sec.* 7, *p.* 40.

But, without any controlling reference to the principle of law in question, which has been very generally adopted in this country, although, doubtless, often misapplied, as in cases where the consideration of the defendants' promise was not clearly divisible and separable, presenting no definite and distinct standard for compensating the defendant for its breach, as in the case at bar, it is by no means easy to say, when we go back to the contract as presented in the plea, and look rationally at all its parts, that these contracting parties ever did actually agree, that the performance of the undertaking of Hudson, should be a condition precedent to the payment of the purchase money.

Latterly, the more enlightened courts, in deciding questions like this, incline more to good sense and common justice, than to severe and technical rules. Thus giving fuller and freer sway to a general rule, expressed in the case of *Atkinson vs. Ritchie*, 10 *East.* 530, to this effect, that is to say, "that whether a thing be a condition precedent, depends on the reason and sense of the

thing, as it must have been understood by the parties, and it is to be collected from the whole contract."

Looking, then, to the contract set up in the plea in this view, it may be in the first place remarked, that it is nowhere alleged in the plea, either in terms, nor by necessary implication, that the performance of Hudson was, by the terms of the contract, to be a condition precedent to the payment of the purchase money for the land, or any part of it. And waiving any question as to whether, under such circumstances, proof to that effect could be received under the plea, it may be in the next place remarked, that if there had been such an agreement, it would have been out of the usual course of sensible contracts by men of ordinary prudence.

It is stated in the plea, that the defendants, with the consent of Hudson, bought the land for $1100, " and executed their said notes in payment therefor, one of which was the note herein sued, and which was, by consent of all the parties, taken in the name of James Hudson, the said James Hudson then and there agreeing with the said defendants, that, if they should give their said notes for said tract of land, he would, immediately, assign to said defendants," &c.

The undertaking of Hudson, then, to assign, &c., was, in terms, to the defendants, and was not limited to the note in suit, but equally extended to all the notes. If, therefore, an inference is to be drawn from what he undertook, that an agreement was made by these contracting parties, that his performance was to be a condition precedent to the payment of the purchase money, then it would seem that this agreement, also, must extend to all the notes. If that is done, then Winstead and Tate have conveyed away a tract of land and taken notes for the purchase money, payable upon a condition that they themselves cannot perform, nor compel Hudson to perform, from anything that appears in the plea, otherwise than by indirection.

If it could be inferred that Hudson's performance was to be a condition precedent to the payment of that note only, which, by

agreement of all the parties, was made payable to him, such an undertaking would present no unusual feature, because parting with nothing of value, in exchange for the note, and the condition being one, which he, himself, could perform, and which he would be stimulated to perform in order to get the money on the note, it would be a rational one. But, to draw such an inference, it would be necessary to go beyond the plea, and imagine things from which to draw such a conclusion.

The demurrer admits the facts stated in the plea, but it does not go beyond it to imagine other facts, and confess them also.

But, without proceeding any further with this train of investigation, it may be said, with perfect safety, that the improbability is as great, that Winstead and Tate should have agreed that the performance of Hudson should be a condition precedent to the payment of the purchase money, as that the defendants should have agreed that it should be paid before the assignment of Hudson. Winstead and Tate might well have agreed that Hudson might stipulate, as he did, without necessarily agreeing, also, that Hudson's said stipulation should be a condition precedent to the payment of the purchase money.

When that is the case, it cannot be said that it has been collected from the whole contract as set out in this plea, that according to the reason and sense of the thing, as it must have been understood by the contracting parties here, the performance of Hudson was a condition precedent to the payment of the purchase money.

Under such circumstances, not the slightest violence is done to sound sense or common justice, in giving full sway to the principle of law which we have discussed, which regards it as unjust, that the defendants should keep the land, and refuse to pay the purchase money, because the incumbrance has not been removed, when, as in this case, the consideration for the promise to pay is clearly divisible and separable, and presents a definite and plain standard for an admeasurement of damages for them. Clearly, under other circumstances than these, under which these

defendants present themselves, instead of being turned round to a cross action, they might recoup their damages, as was allowed in the case of *Todd vs. Summers,* 2 *Grattan Rep.* 167, where Summers, in April, 1838, having agreed to sell Todd his interest in a tract of land, with the improvements thereon, for which Todd agreed to make for him 50,000 good staves by the following Christmas, (Summers to saw the timber to Todd's hand,) 25,000 more good staves by the 1st May, 1839, and 25,000 by the 1st of the following November. It appeared in evidence, that Todd had been put in possession of the land, and continued to hold it; that in 1838 and 1839, he had made from 18 to 25,000 staves, out of timber sawed by Summers, but Summers had not sawed the balance of the timber, which, by his agreement, he was bound to saw for Todd to work up. The action was assumpsit, by Summers against Todd, to recover damages for failing to make the balance of the staves. Todd insisted upon Summers' failure to saw the timber. But, the court, to "prevent a failure of justice," refused to hold the agreement of Summers (to saw the timber,) a *condition precedent,* but treated it as an independent agreement: but that Todd might mitigate Summers' recovery, by any just cross-demand of his, arising from the failure of Summers to saw the timber.

Doubtless, if the pleader had designed to set up any other defence than that of recoupment, the frame of his plea would have been different, but the counsel in this court, seeing it bad, in that view, has endeavored to sustain it in the second one that we have taken of it. We think it equally bad in either view.

The judgment will be affirmed.