## WORTHINGTON vs. CURD & Co.

Where the subject matter of a bill for relief is available, and has been presented as a defence in a suit at law upon the instrument against which relief is claimed, the decision upon it there would preclude its presentation in a court of equity, though equity had jurisdiction over it concurrent with law. (*Hempstead vs. Watkins*, 1 *Eng.* 317.)

But the unavailing attempt to use at law, by way of defence, matters only cognizable in equity—such as a partial failure of the title to land, which is a subject of equitable relief alone—could not prejudice the right to make them the foundation of a bill in chancery.

Where a party vendee, for his own protection, substitutes his own obligation in lieu of an existing incumbrance upon the land, on any claim for relief growing out of such incumbrance, he is not entitled to interest upon the principal amount for which his obligation was given—it becomes his own debt from the date of its execution.

Where there is no actual prosecution of a paramount title or incumbrance, the insolvency or non-residence of the vendor will not, when coupled with the mere existence of such title or incumbrance, give to the purchaser a right to equitable relief.

Where one buys with a knowledge of an incumbrance, he must be held in equity to have waived any right to enjoin the collection of the purchase money, much more to abate from the price of the lands the amount of the incumbrance.

A knowledge of incumbrances or defects of title is no objection to recovery upon the covenants of the deed in a court of law, but it is a ground for equity to refuse relief out of the unpaid consideration.

The assignee of a bond or note is, under our statute, subject to any defence which might be availed of as against the assignor.

*Appeal from Chicot Circuit Court in Chancery.*

Hon. John C. Murray, Circuit Judge.

Garland, for the appellant.

The rule that a party is bound by the defence he makes, in whatever court it may be, does not apply to cases in which defences are attempted that are not properly within the jurisdiction of the court in which the suit is pending.

Judgments are conclusive between parties and privies in regard to matters that were directly at issue. 1 *Greenl. Ev.* 528, 529; 7 *Pick.* 149; 17 *Pick.* 7; 2 *Gall.* 216; 6 *Mass.* 286; 1 *Phil. Ev.* 321, *n.* 557.

It is not necessary for a vendee to wait until he is actually evicted. He is to be so situated with respect to the incumbrance that unless it is discharged by some one he will be evicted—this is the true rule. *Rawle on Cov. for Tit.* 237 *and notes*, 239, 244, 247, 255, 258.

The assignee of a note is subject by our law to all the equities against the assignor.   13 *Ark.* 532; 5 *Eng.* 505.

HEMPSTEAD, for the appellees.

The judgment of a court of competent jurisdiction is binding upon parties and privies in all future controversies relating to the same subject matter.   *Phil. Ev., Cow. & Hill's* 3d 824, *note* 586; 1 *Eng.* 79, 317, 355.

The vendee is bound by prior notice of an incumbrance where there has been no false representation or fraudulent concealment by the vendor.   2 *Ala.* 108; 1 *Sm. & Mar.* 443; 3 *Ib.* 683.

There is no relief in equity on the ground of failure of consideration where possession of land has passed and continued without any eviction at law under a paramount title—the only remedy in such case is at law upon the covenants in the deed. *Davis vs. Tarwater,* 18 *Ark.* 210; 1 *John. Ch. Rep.* 218; 2 *Ib.* 520.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

In 1840, Abner Johnson sold to Worthington, the appellant, a large quantity of lands in Chicot county, and gave a deed of general warranty, for which Worthington was to pay him twenty-five hundred bales of cotton; two hundred and fifty bales a year.   Ten notes or bonds were given, each for the last named amount of cotton, payable at the beginning of the successive years from the purchase.   All were paid but the last two, falling due in 1849 and 1850.   To avoid their payment, Worthington filed his bill, alleging that the lands were subject to a stock-mortgage to the Real Estate Bank for twenty thousand dollars of stock subscription, for money obtained on stock credit; which, with interest, amounted on the 1st December, 1852, to nineteen thousand four hundred and eighteen 13-100 dollars: that the title to the south-east quarter of section twenty-two, included in the purchase, was not in Johnson; that Thomas T. Tunstall claimed by suit one piece of the land, for which, at sheriff's sale, to discharge that claim, Worthington was obliged to pay

eight hundred and fifty dollars; that Chester Ashley's representatives had sued him for one quarter section of the land; and that another tract in the purchase was swamp land, and was owned by the heirs of Silas Craig: for all which incumbrances, and failures of title in Johnson, Worthington claimed an abatement of the consideration for the land, out of the two notes mentioned.

No money has been paid by Worthington to remove the incumbrances, or on account of the defects of title, but for buying in the Tunstall claim, and for the stock credic debt. Worthington has been in possession of the lands since his purchase in 1840; how long Johnson and others, with whose possession that of Worthington could be connected, had the lands is not stated.

The note due in 1849, was, by the court below, canceled, and Worthington discharged therefrom on decree against Abner Johnson, or against his unknown heirs: while Curd & Co., who hold the note due in 1850, resisted the bill, obtained its dismissal, and a dissolution of the injunction which had been granted against the collection of a judgment at law, which they had procured on the note. This judgment was rendered in the Circuit Court in October, 1852, and was affirmed by this court at its January term, 1855, and is reported in 15 *Ark.* 491.

With regard to the piece of land that Johnson is charged to have no title to, that is, to the south east quarter of section twenty-two, and to the swamp land said to be claimed by the heirs of Silas Craig, no proof seems to have been attempted to be made to support the bill. And though the bill is confessed against Johnson and his heirs, no right of compensation for those lands, by deduction from the price of the whole, could be made without evidence from which to ascertain what should be its amount.

We do not think that Worthington is entitled to any relief on account of the claim made by the Ashley suit for the south east quarter of section twenty-three, township sixteen south, range one west. No evidence of title of Ashley is before us; none of a claim, but that a suit was pending at the March term, 1858, of

the Chicot Circuit Court; for William E. Ashley's deposition being only a verbal statement of the effect of Chester Ashley's papers, cannot be dignified into evidence by being so called. What the claim is we do not know: whatever the title was, so far as this suit is concerned, we may suppose that the adverse possession of Worthington and of Johnson may seriously affect it. At least, nothing is in the case whence we ought, on account of that claim, to infer anything against Worthington's right, so as to protect it by the indemnity sought in the bill.

For the Tunstall land, the south half of the north east quarter of section twenty-three, the original bill averred that a large deduction ought to be made, as it was valuable from its appurtenances, it being the site of the dwelling house, and main plantation improvements. But what was claimed by the bill subject to the event of Tunstall's suit, which was then pending, by the sale of Tunstall's interest under execution, and consequent dismissal of his suit, was reduced to eight hundred and fifty dollars, the sum Worthington paid for it, which a supplemental bill claims he was obliged to do for his protection, and for which, he should be reimbursed out of the two unpaid cotton notes. We do not perceive the force of the claim. It cannot be said that Tunstall had any right to the land, that the result of his suit would have charged the land with any incumbrances, until a final decree had so declared. And if Worthington thought proper to bid and buy, at the sheriff's sale of Tunstall's interest, he did so for his own convenience, and at his own cost, unless he could show Tunstall's title to be paramount to that of Johnson, and to show this, no attempt was made in the case.

It is objected to the relief sought concerning the Real Estate Bank stock mortgage, and stock loan, that they had been subjects of a common law defense, and that hence Worthington could not urge them as grounds of equitable consideration.

The seventh and eighth pleas to the action of covenant upon one of the bonds included in this suit, presented these subjects as defenses. And if they were proper subjects of defense at law, the decision upon them there would preclude their presen-

tation in a court of equity, though equity had a jurisdiction over them concurrent with that of law. So is *Hempstead vs. Watkins*, 1 *Eng*. 317, and the cases of this court to the same point are numerous. But if these defenses could not be made at law, but are the exclusive subjects of equitable jurisdiction, the attempt to use them as legal defenses could not prejudice the right to make them the foundation of a bill in chancery.

What was stated in the seventh and eighth pleas were partial failures of title, and were the subjects of equitable relief alone. Hence they were quashed on demurrer, and the quashal was not alleged as cause of reversal of the judgment. *Worthington vs. Curd*, 15 *Ark*. 496; *Wheat vs. Dotson*, 13 *Ark*. 709; *Kerr vs. Henson*, 17 *Ark*. 254. Whatever relief could be had upon these matters in equity, if orignally introduced there, can then still be had, notwithstanding they were set up as legal defenses.

The money obtained by Johnson from the Real Estate Bank on his stock loan, Worthington was obliged to pay to protect himself, as otherwise, the decree *pro confesso* rendered against Johnson and Worthington would have been made final and would have been enforced by a sale of the lands. Accordingly, about the first of December, 1852, Worthington paid this debt by substituting his own note for. nineteen thousand four hundred and eighteen 18-100 dollars. Thenceforward the debt was his own, and he cannot charge the interest accruing afterwards to Johnson. His note was a payment of Johnson's note, as much as if he had paid the money. *Neale vs. Newland*, 4 *Ark*. 509.

It is then immaterial how much more Worthington paid the Real Estate Bank than the original amount assumed, as it was paid for the accommodation that was extended to himself. By the course of dealing between the trustees of the Real Estate Bank and its debtors, we must conclude that the amount assumed by Worthington could have been paid in the bonds of the State issued for the Real Estate Bank, as all debts could always have been paid in overdue coupons. The evidence of the value of State bonds, like that of every fact in the case, is very meagre, it being only that of Davies, that in 1854, they

were worth sixty-three cents in New Orleans, and of Peay, that at the same time they were worth from sixty to sixty-four cents, which was much higher than their subsequent market value.

It may then be supposed that the value of State bonds was not more in 1852, than it was in 1854. But even if neither party be prejudiced by such a computation, we regret the indefinite nature and lack of evidence perceptible upon this point, and upon the other points in this case. But Worthington is proved to have made a special contract to pay this debt in bonds of the State except five per cent. which he was to pay in cash. Conceding even that he might charge Johnson according to his own contract, and counting State bonds at sixty-three per cent., this debt was payable with twelve thousand six hundred and ninty-two 68-100 dollars.

By the decree of the court below as between Johnson and himself, he is indemnified against that by his discharge from the cotton note due 1st January, 1849.

And what two hundred and fifty bales of cotton were worth at that time, we have no information. But taking cotton to be what Rowlett, a witness in the law suit, whose evidence is included in an exhibit, showed Worthington to admit it to be worth in 1850, that is, ten cents a pound, the note, with interest to the time when Worthington made his note to the Real Estate Bank, would amount to twelve thousand three hundred and fifty dollars, leaving Johnson a loser of only the sum of three hundred and forty-two 68-100 dollars. It was on Worthington, the plaintiff, to have made clear by evidence, that his loss was greater than his indemnity; and if we believed that there was such a balance due him, not having shown it, we should not remand the case to ascertain an amount so small compared with the interests involved in this suit. But we have no such belief; and there is as good reason, as the contrary, to conclude that the canceled cotton bond of 1849 fully indemnifies Worthington for all he has paid the Real Estate Bank.

We cannot disturb the decree of the court below on account

of anything connected with the stock loan to Johnson, or its payment by Worthington.

We have thus far foreborne any discussion of the right of Worthington to have the value of the incumbrances set forth in the bill deducted from the price of the lands. And the decision of this court, in the recent case of *Hoppes vs. Cheek,* made the present term, having announced the rule of law upon this subject, we need only refer to that case. The rule laid down is, " where a purchaser has been let into possession, and continues " without interruption under a paramount title, he is not, in " the absence of fraud, entitled to equitable relief from payment " of the purchase money, upon the ground of defect of title." * * " There are cases, however, in which it seems to have been " held that the assertion and prosecution of an adverse title, " coupled with the insolvency, or non-residence of the party " bound by the covenants, are sufficient to bring the case with- " in the *quia timet* jurisdiction, which, in extraordinary cases, " courts of equity have exercised."

In this case the non-residence of Johnson is proved, and Worthington claims that he is dead, and has continued the suit against his unknown heirs; but as yet there has been no assertion or prosecution by suit of the stock mortgage incumbrance as covering the stock subscription of Johnson, which is the alleged paramount title. We do not know from anything in the case, that this prior incumbrance will be asserted, or that if so done, to what extent it will be an incumbrance; and no means of acquiring exact information upon this matter have been suggested to us, nor do we know how this can be attained until there shall have been a settlement of the affairs, and application of the assets of the Real Estate Bank to the payment of its liabilities. The authorities are decisive that, where there is no actual prosecution of the paramount title or incumbrance, " the insolvency or non-residence of the vendor will not, when coupled with the mere existence of such title or incumbrance, give to the purchaser a right to equitable relief." *Rawle on Cov.* 687, (*2d Ed.*;) *Latham vs. Morgan*, 1 *Sm. & M. Ch.* 618.

Worthington accepted the deed from Johnson with full knowledge of the Real Estate Bank mortgage, and according to the testimony of Adair, relied confidently on Johnson's promise to remove all incumbrances from the lands. Such also is the effect of the testimony of Davies, who expresses a belief that this would have been accomplished by Johnson, but for the assignment of the Bank's assets to trustees, and the general confusion into which its business and affairs were precipitated. And it appears in the case, that the stock mortgage, so far as concerned the stock subscription, was not considered by Worthington as a serious objection to the purchase of the lands. But however this might be, buying with a knowledge of the incumbrance, he must be held in equity to have waived any right to enjoin the collection of the purchase money, much more to abate from the price of the lands the amount of the incumbrance. *Rawle on Cov.* 680.

A knowledge of incumbrances, or defects of title, is no objection to recovery upon the covenants of the deed in a court of law; but it is a ground for equity to refuse relief out of the unpaid consideration, because it supposes that, with such knowledge, the vendee chose to rely upon the covenants; and to their legal effect he will be remitted. As to the latter part of the proposition, see *Rawle on Cov.* 680, and as to the former, *Walker vs. Johnson*, 13 *Ark.* 526.

We have treated the note sued on in the hands of Curd & Co., as if it were belonging to Johnson, for under our statute, the assignee of a bond or note is not free from any defence to which it was liable against the maker. *Walker vs. Johnson*, 13 *Ark.* 531.

The decree of the court below must be affirmed.