Mr. Justice Walker delivered the opinion of the Court. This was a suit in chancery, brought by the complainant (Cook) against the heirs and legal representatives of the estate of Alexander Burton, deceased, for the specific performance of a contract, alleged to have been entered into by Cook, with one William C. Walker, and consummated by Burton in trust for the benefit of Cook. It appears, from the history of the case, as disclosed by the bill, that William C. Walker, a minor heir at law of Nancy Walker, deceased, claimed, as one of the heirs of said Nancy, an undivided interest in certain slaves, then in the State of Arkansas and held adversely to his claim by one Moody; and, for the purpose of enabling him to prosecute his suit for their recovery, sold, to said Cook, who was then a practicing attorney at law in said State, an undivided fourth part of his interest in said slaves; in consideration of which said Cook agreed, as such attorney, to prosecute a suit for the recovery thereof; and also to pay one-half of the expenses and costs of suit. It is objected, by the defendant, that, admitting this contract to have been made, as stated in the complainant’s bill, it was void, under the law of champerty and maintenance, and therefore could not vest a title in the complainant. Whether this be true or not, it is unnecessary to enquire, unless it should appear that the contract was in other respects valid and obligatory upon the parties. It is conceded that William C. Walker was a minor when the contract was entered into, and it is also conceded that, unless after mature age, it was affirmed by a subsequent sale to Burton for Cook’s benefit, there was no act of subsequent affir-mance by William C. Walker. On the contrary, it is manifest that, unless the sale to Burton was for the benefit of Cook, the sale to Burton was an express disaffirmance of the contract with Cook. It is, therefore, apparent that the whole merits of this case must turn upon the nature and extent of the transactionsbe-tween Burton and Cook, and of the subsequent purchase made by Burton of Walker, and the other heirs at law of Nancy Walker. Upon these points, it is charged by Cook that he made an express agreement with Burton, that he (Burton) should go to Kentucky, where the said William C. Walker and the other heii’s of the said Nancy resided, and procure an affirmance of the contract so made by the said William C. with the said Cook, whilst a minor, as well as an affirmance of a like contract which the said William C. had, during his minority, made with the said Burton, by which he contracted with and sold to the said Burton his remaining three-fourths interest in the estate of said Nancy: and, further, that said Burton should buy out the interest of the other heirs of said Nancy to said slaves, one-fourth of said purchase to be for the benefit of said Cook, and the remaining interest for himself: That said Burton did go to Kentucky, and did effect the affirmance of the contracts first made with said William 0., and did also purchase the interest of the said other heirs in said slaves in the manner and after the terms agreed upon, but, without reference to the rights of Cook, took conveyances for the slaves directly to himself; notwithstanding which he alleges one-fourth of the purchase to have been in trust for him. It is not alleged, nor is it pretended, that Cook actually paid any consideration for the purchases and conveyances so made by Burton, or that he secured the same to be paid, or in fact that there was any understanding whatever upon this subject. On the contrary, the evidence would seem to repel the presumption of his ability to contribute his proportion of the purchase money. We will next proceed to determine how far these allegations are sustained by the proof. There can be no doubt but that Burton was well aware that Cook had been retained by William C. W alker, as an attorney in the case, and also of his contract with said William C. for one-fourth interest in said slaves. It is in proof, too, that he did go to Kentucky, and that he made the pm'chases aforesaid, and took the conveyances in his own name. But so far as regards any contract or understanding between himself and Cook, before he started to Kentucky, or of the cir•cumstances connected with the purchasse so made, we must look alone to the statements of Burton, after his return from Kentucky, to the witness Lockhert, the substance of which is, that when he went to Kentucky, William 0. Walker refused to ratify or affirm the contracts made during his minority with himself and Cook, unless he (Burton) would pay him an additional sum of one hundred and fifty, or one hundred and seventy-five dollars: that he did pay said sum to William C. Walker, and made the purchase in his own name, for the benefit of Cook and himself; that he had him in his power, but, in consideration of the trouble Cook had been at, he would not take advantage of him. But that it was not his (witness’) understanding, from what Burton told him, that there was any agreement or understanding between himself and Cook upon the subject of the purchases or affirmance of the former purchases of said slaves. What the true state of case may have been, we cannot pretend to say: from the situation and interests of the parties, it would have been quite natural for Cook and Burton to have conferred together before Burton’s departure for Kentucky, yet there is no proof of the fact. And from the evidence, it is evident that, so far from William C. Walker’s affirming his contract with Cook, after he had become of age, the proof is that he refused to do so, and conveyed it directly to Burton, for the sum of $150, or $175. It is true that Burton said that he bought for the benefit of Cook, but upon no agreement to do so; nor does it appear that any consideration passed from Cook to him for so doing. If Burton, had made the purchase with money belonging to Cook, or upon an express agreement with Cook to that effect; then even, though the conveyance was made to himself individually, he could not defeat Cook’s right to a portion of the estate so purchased, for, in such case, the law would create a trust. McGuire et al.v. Ramsey, 4 Eng. 527. Such not being the case in this instance, although it ivould seem that it was the intention of Burton at the time to let Cook have the interest which he had previously purchased of Walker, yet it was in the nature of a voluntary act, a gratuity which he might at pleasure decline. As the pi’oof is not sufficient in our opinion to establish "a valid contract of purchase of theinterets claimed by Cook in the slaves, it is wholly unnecessary to enquire whether the contract was, champertous or not. From the view which we have taken of the case it follows that the circuit court correctly refused to decree a specific performance of contract. This brings us to consider whether, under the state of case presented and the prayer for relief, the court had power to determine and decree any other than the specific relief prayer for. The bill was evidently drawn alone with a view to asserting a title to an undivided interest in certain slaves under a specific contract, and for a propotionable part of their hire; and the prayer for special relief is limited to these objects. There is also a general prayer for relief. It is true that where there is a prayer for specific relief, and also a general prayer for relief, if the state of case as presented by the bill should not be sustained in evidence, or the court should, upon principles of equity, refuse the specific relief, it may, notwithstanding, give to the complainant under his general prayer any relief warranted by the facts as setfourth in his bill. But, although it may, from the proofs, be apparent that the complainant is entitled to other relief, yet, unless the bill is so framed as to put such facts at issue, the court will not decree such further relief, for it would be decreeing upon an issue not before the court, and to which the proofs could not properly apply, and would tend to surprise the defendant. Story Eq. Pl. 42. Mitford Eq. Pl. 38. Colton v. Ross, 2 Paige 296. Pleasants Co., v. Glascock et al., 1 Sm. & Mar. Ch. Rep. 24. Moore v. Maddin, 2 Eng. 535. Mr. Daniel, in his late work on chancery Pl. & Pr., Vol. 1 page 437, has laid down the rule with great clearness. He’says, “It is to be observed that, in order to entitle the plaintiff to a decree under the general prayer, different from that specially prayed, the allegations relied upon must not only be such as to afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of showing a claim to relief, and not for the mere purpose of corroborating the plaintiff’s right to the specific relief prayed; otherwise, the court would take the defendant by surprise, which is contrary to its principles. Therefore, where a vendor filed a bill for a specific performance, but owing to his not being able to make out a title to some part of the property, was unable to obtain a decree for that purpose, it was held that the court could not, under the prayer for general relief, obtain an inquiry into the management of the property during the time it was in the vendee’s possession, although the bill did contain charges of mismanagemnt which however had been introduced not with a view to obtain compensation, but to establish the fact of acceptation of title by the defendant.” The rule thus laid down by Mr. Daniel, and the example given under it, are both applicable to the case under consideration. Here the bill was filed for spacific performance of a contract. The professional services of the complainant were not the subject of contest or litegation further than to show the consideration upon which the contract sought to be enforced was entered into. The evidence taken, tending £c’’show the extent and value of the complainant’s services, beyond this, was foreign to the issue. The Circuit Court, therefore, went beyond the state of case before it to direct an inquiry before the master as to the value of the complainant’s services, and to decree in favor of the complainant. Had the complainant been doubtful about his right to recover upon the particular state of case presented, he should have set forth the facts so as to entitle him to a decree upon any other given state of case which he supposed might arise, and have made his prayer in the alternative, that if relief should be refused him upon one of the grounds alleged, he might be decreed relief upon the other. Story Equity Pl. 42. Dan. Ch. Pl. & Pr. 1 vol. 434. Instead of relying solely upon his right to specific performance of his contract, if the complainant had set forth his claim to compensation for professional services, and asserted his right to a lien on the property in suit for its payment, even though in the hands of an assignee, and made a specific alternative prayer for relief, or even under the general prayer, we would not say that he should not recover. As the decree must be reversed, and the cause remanded to the Circuit Court, we have looked, with some care, into the adjudicated cases for some precedent which would authorize the Circuit Court, when the case reaches there, to permit the complainant to amend his bill so as to present a proper case for relief; but have found none that extends beyond the amendment of the prayer of the bill, which would not reach the defects in the bill under consideartion. A new state of facts must be presented, which, at this state of the proceedings, is not admissible. The decree must, for the error aforesaid, be reversed, and the cause remanded to the Circuit Court, with instructions to that court to dismiss the bill without prejudice to the rights of the complainant.