## MARSHALL, ADM'R. *v.* SLOAN, ET AL.

CREDITORS—*How payments applied.*—Where a party owes a person two different sums of indebtedness, and money is paid by the debtor, without instructions as to which debt the payment is to be applied in extinguishment of, the creditor may apply it to either.

INSTRUCTION—*When improperly given.*—An instruction, though unobjectionable in itself, is improperly given where there is no evidence to warrant it.

SURETY—*A personal defense not available to principal.*—The defense that a person signs a note as surety, is a personal defense and one that the principal of a note can not set up.

*Appeal from Randolph Circuit Court.*

Hon. ELISHA BAXTER, Circuit Judge.

*Watkins & Rose,* for appellant.

The court erred in permitting the witnesses to prove that a part of the defendants were sureties. Parol evidence was not admissible to vary the written contract. *Trowbridge v. Sanger, 4 Ark., 179; Bertrand v. Byrd, 5 ib., 651; Field v. Watkins, ib., 672; Miller v. Hemphill, 9 ib., 489; Black v. Bowman, ib., 501; Scott v. Henry, 13 ib., 125; Jordan v. Ferril, ib., 593; Hensely v. Brodie, 16 ib., 519; Borden v. Peay, 20 ib., 293; Richardson v. Comestock, 21 ib., 69.*

The second instruction given by the court was abstract, and should have been refused. *State Bank v. Williams, 6 Ark., 161; State Bank v. Hubbard 8, ib., 186; Johnson v. Ashly, 7 ib., 470; Stanton v, State, 13 ib., 318; Collier v. State. ib., 676; Owen v. Chandler, 16 ib., 651; Morton v. Scull, 23 ib., 289.*

As the defendant, at the time of the payment, made no appropriation of it, the plaintiff had the right to apply to any debt due him: *2 Parsons Cont., 141.* Could the plaintiff have applied the payments to the debts due him as administrator? *Fairchild v. Holly, 10 Cowen., 175; Johnson v. Boone. 2 Harring, 172; Sneed v. Wiester 2 A. K., Marsh, 277.*

33

*Garland & Nash,* for appellees.

We submit: *First.* A principal could not make a new contract so as to bind his security, without his, security's, consent.

*Second.* In paying debts to a creditor by a debtor, the creditor was bound to apply the payments on those debts where there were securities.

*Third.* And in making a new arrangement or contract, if part payment was made under that contract, the statute of frauds did not apply. We think these propositions well sustained by the law. *See 1st: 2 Vesey, 540; 6 Ark., 317; 15 Gray (Mass.) 173; 7 Hill, (N. Y.) 116; 2nd: Burge on Suretyship, 123, et seq.; 3d: Rose's Dig. p. 365, (Title Fraud, Statute of,) sec. 3; 1 Parsons Cont. 6, et seq.; ib., 46, et seq.; 2, ib., 10–12.*

McCLURE, C. J.

On the 8th of February, 1866, H. C. Sloan, William B. Janes, A. Oakes, George Wells and Joseph J. Wyatt, executed and delivered to C. J. Marshall, as administrator of the estate of William B. Marshall, deceased, their joint note for "nine hundred and eighty-nine dollars, in Louisiana bank money, and if not paid within thirty days, the amount was to be eight hundred and thirty-two dollars and seventy-five cents "in Confederate currency," at the rate of ten per cent. per annum "until paid."

Marshall, as administrator, brought suit against Henry C. Sloan, William B. Janes, Alfred Oakes, and Joseph J. Wyatt, but does not say anything about George Wells. Whether service was had on any of the defendants, does not appear from the record. At the October term, 1869, Henry C. Sloan, one of the defendants, filed an answer, in which he says: "that he and Janes (another defendant) executed the note sued on, as principals, with Oakes, Wyatt, and Wells as sureties. That one Freeman, on behalf of Sloan, satisfied and contented said Marshall of said debt, by delivering to him a large amount of goods, wares and merchandise, and a large amount of bills,

bonds and book accounts, which the plaintiff then and there accepted, in full accord and satisfaction of said debt; that in March of 1867, Janes, one of the defendants, paid to the order of Marshall, eight hundred dollars, which the said Janes applied to the payment of said debt, as far as the same would extend, which amount should be credited on said note of that date. To this answer, Marshall filed a demurrer, setting up:

*First.* That the answer of Henry C. Sloan does not aver accord and satisfaction to plaintiff *as administrator.*

*Second.* The answer sets up payments to plaintiff, *in his individual capacity,* and not as *administrator.*

*Third.* The answer is double, in this, that it sets up two separate causes of defense in bar.

Oakes, one of the defendants, entered his appearance and leave was given to amend. Whether an amended answer was ever filed, is a fact of which the record, in this case, leaves us in blissful ignorance. The next thing happening in chronological order, as appears by the record, is, that "the parties announced themselves ready for trial." A jury was impaneled and it found for the defendants, and the court rendered a judgment accordingly. The appellant made a motion for a new trial upon the following grounds:

*First.* The court erred in instructing the jury.

*Second.* The court erred in refusing to instruct the jury, on the motion of the plaintiff, on the effect of the statute of frauds upon collateral promises to answer for the debt or default of another.

*Third.* The court permitted improper evidence to go to the jury.

*Fourth.* The verdict of the jury is contrary to the evidence and the instructions of the court.

*Fifth.* The court erred in permitting the defendants to show to whom the consideration of the bond, sued on, went, and for what purpose the defendants used the money, by parol testimony.

The motion for a new trial was overruled, and the plaintiff

·excepted and appealed to this court. The trouble about this ·case is, in the absence of the amended answer, to know what . defense was attempted to be set up in the answer, on which, it is presumed, the parties went to trial. The different co-partnerships, founded between Janes and his confederates and the plaintiff, seem to have not only confused the record, but confused the parties, as to their liability. From what can be .gathered from this transcript, it appears that Sloan and Janes ·were in partnership, selling dry goods, groceries, etc., and desiring more capital, they, together with Oakes, Wells and Wyatt, gave to Marshall the note sued on in this case, which is a .joint note. Sloan sold his interest in the business to one Freeman, who verbally assumed the payment of one-half of the ·outstanding indebtedness of the firm of Sloan & Janes, a part ·of which consisted of the note now sued on. Shortly afterward Marshall, the appellant, and Wyatt, one of the appellees; ·purchased the interest of Freeman, and they agreed to pay one-half of the firm debts owing by the firm of Freeman & Janes, a portion of which was the note now in suit, and the firm was known as Janes & Co. Continuing in partnership some time, Marshall, the appellant, sold his one-fourth interest to Janes & Wyatt, his former partners, for three hundred and fifty dollars, and the firm was thereafter known by the name of Janes & Wyatt, and it agreed to assume the payment of the outstanding indebtedness of the firm of Janes & Co., a part of which consisted of the note now in controversy. It seems, after this last ₃ale was consummated, that the partnership affairs were not thoroughly understood, and a friend of all the parties was ·chosen to make settlement for them, which was agreed to, and formed the basis of the co-partnership between Janes & Wyatt· King, the man who made the settlement, says that Marshall was charged with $59$\frac{55}{100}$, and with the further sum of $800, on the firm books of Janes & Co. in making the settlement, and that, when the firm books were balanced, there was a balance due Marshall of between one and five hundred dollars. Marshall swears that the exact amount due him in the settle-

ment was $425.    King further states that the note, in contro-
versy, was not taken into consideration by him in the settle-
ment he made for the firm of Janes & Co.

The first instruction given by the court was, "that the
burthen of proof is on the defendants to show that the debt is,
satisfied, and the jury will find according to the preponderance
of the testimony in the case."    There is no evidence in the bill
of exceptions showing any satisfaction of the debt.    The testi-
mony of the defendants is, that sometime after Marshall had
drawn the $800 from the firm, that they wanted him to apply
the amount on the note held by him, as administrator, and
that Marshall told them he would not do it, and that the
amount had been appplied on account, and when King made
the settlement for them, they assented, by silence and acquies-
cence, to the credit being applied on the partnership transaction.
It is a well settled principle of the law, that if one party owes
another two different sums of indebtedness, and money is paid
by the debtor without instruction as to which debt the pay-
ment shall be applied to the extinguishment of, the
creditor may apply it, as to him seems best, and this is just
what Marshall did, and to which these defendants assented
when they allowed Marshall to be charged in the settlement
of the partnership accounts with the money they now contend
should have been applied to the payment of the note sued on.
The second instruction would, perhaps, be unobjectionable, if
there was any proof upon which it could be based, but there is
no evidence in the bill of exceptions that would warrant the
giving of any such instruction.    The third instruction, like
the second, although good enough in the abstract, has no
application to the facts proven, and coming from the court
upon a pre-supposed state of facts, no doubt had a tendency to
lead the jury into the belief that the court regarded the state
of affairs to be proven, that the instructions refer to.    The
fourth instruction is:    "If the jury find that the firm of
Wyatt & Co., paid money to the plaintiff, on his order, it will

be presumed the payment was made on a precedent debt, unless the contrary be shown, and such a payment cannot be applied to an indebtedness subsequently accruing, when the rights of other parties would be prejudiced thereby." No such instruction as this ought ever to have been given. *First,* because it was shown, by the admission of the defendants, that the amount drawn from the firm of Janes, Wyatt & Co., was, by the consent of the defendant, charged to the appellant in the settlement of the partnership account. *Second,* because in the absence of instruction, at the time of the payment of the money, the creditor had the right to elect where he would credit it, and, *third,* because the appellant could make no application of the money that "would prejudice the rights of other parties," if he had desired to. We have said that the note sued on was a joint note. The object of the fourth instruction was, to give the jury to understand that Oakes, Wells and Wyatt had a right, as sureties, to have the money of the co-partnership of Janes, Wyatt & Co., applied to the payment of a debt which they might become responsible for. In the first place the record does not show that either Oakes, Wells or Wyatt sought any advantage, or made any defense on the ground of being sureties. In fact neither of them answered. The defense that a person signs a note as surety, is a *personal* defense, and one that the principal in a note cannot set up. If Sloan, who is the only one of the defendants who answers at all, tendered any issue of this sort, it was an immaterial issue, for he admits that he signed as principal. For these reasons, we say, that the giving of the fourth instruction was clearly erroneous. There is no objection to the giving of the fifth and last instruction.

The judgment is reversed, and the cause remanded to be proceeded in according to law and not inconsistent with this opinion.