ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* HILL.

[Two Cases.]

Opinion delivered March 11, 1905.

1. APPEAL—SUFFICIENCY OF EVIDENCE.—In determining the sufficiency of the evidence to support the jury's finding it is the duty of the appellate court to draw the strongest inference in favor of such finding that they are warranted in deducing from the evidence.

2. NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—Evidence that deceased was struck by a slowly moving engine, and was dragged thirty feet before she received the injury which resulted in her death, that warning was given to the engineer as soon as she was struck by loud screams and gestures, and that there was nothing to prevent his hearing the screams and observing the gestures, and that if he had heeded the warnings he could have stopped the train in less than thirty feet, was sufficient to sustain a finding that the engineer was apprised of her danger in time to have avoided killing her, notwithstanding he testified that he stopped the engine as soon as he discovered her danger.

Appeal from Monroe Circuit Court.

GEORGE M. CHAPLINE, Chancellor.

Affirmed.

*B. S. Johnson,* for appellant.

Appellee was guilty of contributory negligence. 36 Ark. 371; 47 Ark. 497; 49 Ark. 257; 46 Ark. 513; 50 Ark. 477; 54 Ark. 431; 56 Ark. 255; 61 Ark. 549; 62 Ark. 235, 273, 156; 56 Ark. 433; 84 Ind. 333; 42 N. J. 180; 25 Mich. 290; 23 Am. & Eng. R. Cas. 317; 37 *Id.* 516; 59 Mich. 257; 40 Ohio St. 338; 157 Mass. 336; 95 U. S. 697; 65 N. W. 447. There is no proof of negligence on the part of the engineer. 69 Ark. 382; 92 Ala. 270; 11 Ark. 236; 56 Ark. 13; 31 Ark. 43.

*J. H. Harrod, Walter Hendricks* and *Trimble & Robinson,* for appellee.

Defendant was liable if the decedent's situation was discovered by the engineer in time to have saved her. 61 Ark. 350; 62 Ark. 170. There was evidence to sustain the verdict. 70 Ark. 136.

McCULLOCH, J. These two suits were brought against appellant railway company to recover damages resulting from the death of Mary G. Hill. She was run over by a switch engine of appellant in the railroad yards in Argenta, sustaining serious injury, from which she died about eight hours later. Appellee was her husband, and in one suit seeks to recover for damages sustained by him as husband by the alleged wrongful killing of his wife, and in the other he sues as administrator of his wife's estate to recover for the pain and suffering endured by the deceased by reason of the injury.

The allegation in the complaint relied on by appellee in each suit for recovery charges negligence on the part of the locomotive engineer of appellant as follows:

"In not stopping the engine after plaintiff's wife was first struck, ample warning having been given to employees in charge of the engine to stop the same when deceased was first hit; although said employees could have stopped the engine at once and saved her life, they negligently failed to do so, and dragged her along the track thirty feet or more until she received the injuries that proved fatal."

The two cases were tried together by appellant upon the same testimony and instructions, and separate verdicts upon each cause of action were returned by the jury in favor of the plaintiff, and separate judgments were rendered by the court accordingly.

It was and is conceded that deceased was guilty of contributory negligence in failing to observe proper care while upon the railroad track, and the only issues presented to the jury were, whether or not the engineer in charge of the locomotive discovered her presence upon the track in a perilous condition in time, by the exercise of proper care, to have avoided the injury, and, if so, whether he did exercise proper care and precaution to avoid or mitigate the injury.

The cases were submitted to the jury upon proper instructions narrowing the inquiry to those issues.

The court gave the following instruction, on motion of plaintiff: "If you find from a fair preponderance of the testimony that the employee in charge of the engine that struck Mrs. Hill discovered her peril in time to have avoided injuring her by the exercise of reasonable diligence and ordinary care, and further find that he failed to use such reasonable diligence and ordinary care, and further find that her injuries resulted from such failure, your verdict will be for the plaintiff."

And also gave the following on motion of defendant:

"The court instructs the jury that it is not sufficient to enable plaintiff to recover for the proof to show that the engineer could have or should have known of deceased's perilous position or situation, but the proof must go further and show that he actually knew, as a fact, her perilous situation, and after such knowledge failed to exercise ordinary care to avoid injuring her; and unless the proof shows· these facts, your verdict should be for defendant."

Other instructions were given in line with those copied above, and we find no error in the instructions. The modifications complained of in some of the instructions asked by the defendant were properly made, so as to render them consistent with those given as asked.

With the issues thus clearly and properly defined, the jury found in favor of the plaintiff; and this narrows our inquiry to the sole question whether the testimony, giving it the strongest probative force, is sufficient to support the verdict. It becomes our duty, under the plain mandate of the law, to draw the strongest inference in favor of the finding of the jury that they were warranted in deducing from the evidence. *Merchants' Exchange Co* v. *Sanders,* 74 Ark. 16; *St. Louis, I M. & S. Ry. Co.* v. *Wilson,* 70 Ark. 136; *St. Louis, I. M. & S. Ry. Co.* v. *Rice,* 51 Ark. 467; *St. Louis & San Francisco Ry.* v. *Kilpatrick,* 67 Ark. 47.

The injury occurred about 6 o'clock on the evening of September 16, 1902, while deceased and her sister-in-law, Mrs. F. A. Hill, returning homeward from the city of Little Rock, were walking along the tracks of appellant in the railroad yards in Argenta. They were going north, and the deceased was about

twenty feet in the rear of her companion when she was struck by the engine, going in the same direction. It was a switch engine with a footboard in front, fourteen inches in width and about fourteen inches above the rails, used as a step for the switchmen to stand upon. There was testimony tending to establish the fact that deceased was seen by one of the witnesses on the track five to eight feet in front of the moving engine; that she was struck upon the calves of her legs by the footboard in front of the engine, and knocked down and run over.

The surgeon who attended her testified that he found "a cut on top of her skull, about one inch long, but skull not broken; a cut on front of her right leg just above her shoe top, about three inches long; and her right arm crushed above and below her elbow. The wounds on her head and leg were not fatal, and her death was caused from shock, exhaustion and loss of blood from the wound on her arm."

Mrs. F. A. Hill testified that she and her eight-year-old girl were walking about twenty feet ahead of deceased when she heard deceased screaming, and, looking back, saw deceased upon the track.

"Q. When you heard her scream, what did you do?

"A. I turned to look at her, and ran back to where she was.

"Q. What was she doing when you looked back?

"A. She seemed like she was scrambling to get from under the engine. She was about a half-stooping position.

"Q. She hadn't gone under the engine then?

"A. No, sir; it seemed like part of her limbs was under. She was kind of like this—doing this way.

"Q. Was she making any noise?

"A. Yes, sir; she was screaming.

"Q. How often did she scream?

"A. Four or five times.

"Q. When you saw her, did you run back towards her immediately?

"A. Yes, sir.

"Q. Was you holloing as loud as you could, too?

"A. Yes, sir; the little girl was screaming, too."

ON CROSS-EXAMINATION.

"Q. You couldn't see anything after she passed under the engine?

"A. Yes, sir; I could see her under there.

"Q. What position was she in under there?

"A. She fell, and the engine passed over her. She was lying down when she was under that high part of the engine where the boiler is; she turned over and tried to get up, and got about up, and when the ash pan struck her it knocked her down again, and rolled her over and over.

"Q. How far from her were you?

"A. I was as close to her as I could be then, without being hit by the engine.

"Q. You ran back?

"A. Yes, sir; I ran back right away.

"Q. Where did they pick her up?

"A. They picked her up about the center of the cinder track.

"Q. Did you notice her arm?

"A. Yes, sir; her arm was off then, but her arm wasn't off when she was trying to get up under the engine."

J. R. Willis, another witness, testified that he saw deceased struck by the engine; that he was on the track five to eight feet in front of the engine when he first saw her; that he was about seventy feet from her on the right-hand side of the engine when he first saw her, and that immediately he "ran toward the engine holloing all the time, and looked to see the engineer, but did not see him at that time, but, as the cab went by me, I stooped down to see if the woman was still alive, and what was happening; and about that time the firebox was carrying her along, and I glanced up and saw some man—I suppose it was the engineer—in the gangway. I signalled him to stop. About that time, I was stooping over, walking along and watching the engine carrying the body and roll her over and over. I walked along beside it possibly eight or twelve feet."

The engineer testified that he was upon his seat on the right side of the engine, ringing the bell with his left hand, and with

his right hand upon the throttle, looking ahead up the track; that he saw deceased and her companion alongside the track about 150 feet ahead, but that they were out of his view when the head of the engine passed them, and that he was not aware of the presence of deceased upon the track or under the engine until he heard screams under the gangway at the rear of the engine, and that he immediately stopped the engine.

It is the theory of the plaintiff that the injury to the arm of the deceased, which was proved to be the only serious and fatal injury, did not occur until she had been dragged a distance of something more than thirty feet under the engine. There is sufficient testimony to support this conclusion, as it was shown by physicial appearances that her arm was cut about thirty feet from the point where she was first struck by the engine, which point, according to the testimony, was marked by the broken pieces of glass dishes in her hands at the time she was struck; and Mrs. Hill testified she saw deceased being carried along under the engine with her arm still free and apparently uninjured. The undisputed testimony of witness J. F. Hill shows that the engine, at the speed it was then moving, could have been stopped within five feet. This testimony is, we think, legally sufficient to warrant the finding of the jury that the engineer discovered the perilous situation of deceased in time, by the exercise of due care and precaution in the use of means at his command, to have stopped the engine and prevented the fatal injury. We do not say that the preponderance of the testimony supports that conclusion; it is not necessary that we should so hold, as that was the province of the jury. The engineer stated that he was on his seat in the engine looking forward. One witness, Willis, said that deceased was on the track from five to eight feet ahead of the engine. Two witnesses, Willis and Mrs. Hill, stated that deceased was screaming loudly; that they each immediately started in the direction of the engine, and, with gestures and loud screams, gave warning of danger to attract attention, and that there were no noises of whistles, bells or escaping steam to drown their warning cries. If the jury believed these statements, they were warranted in concluding that the engineer was apprised of the impending danger to human life. They were not bound, in the face of this testimony, to accept the

statement of the engineer that he did not discover deceased nor receive warning of her perilous situation.

Accepting the finding on this point as correct, it follows, in view of the other testimony tending to show how far deceased was carried before receiving the fatal injury and the distance within which the engine could have been stopped, that, after becoming aware of the danger, the engineer could have stopped his locomotive in time to have prevented the injury. Failing to do this, appellant is, under the established principles of law announced, responsible for the damages resulting from the injury imposed.

Affirmed.