FT. SMITH LIGHT & TRACTION COMPANY *v.* BARNES.

Opinion delivered July 23, 1906.

1. STREET RAILWAY—PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE.—One who walks upon a street car track when she knows that a car is approaching, relying upon her own judgment as to the distance of the car and upon her imperfect hearing to protect her in case she is mistaken, and fails to look to see if she has time to cross, is guilty of contributory negligence. (Page 175.)

2. SAME—NEGLIGENCE AFTER DISCOVERED PERIL.—Where there was evidence, in a suit against a street railway company for personal injuries, that defendant's motorman discovered plaintiff's peril in time, by the use of ordinary care, to prevent injuring her, and that he failed to use such care, it was not error to refuse to direct a verdict for defendant, although plaintiff was guilty of contributory negligence. (Page 175.)

3. TRIAL—OBJECTION TO INSTRUCTION—WAIVER.—Where it would have been proper to charge the jury that plaintiff was guilty of contributory negligence, but defendant did not request the court so to instruct, nor rest on its objection to instructions given submitting that question to the jury, but asked the court to submit the question to the jury, it thereby waived objection to the court's submitting the question. (Page 177.)

Appeal from Sebastian Circuit Court; *Styles T. Rowe,* Judge; affirmed.

Appellee alleged that, while she was attempting to cross Garrison Avenue in the city of Fort Smith, she was struck, knocked down and run over by one of appellant's cars and greatly injured, to her damage in the sum of $10,000, for which amount she asked judgment. She alleged that the negligence of appellant, by which she was injured, consisted (1), in operating the car at an unlawful speed of 25 miles per hour; (2) in failing to sound the gong; (3) in the failure of the motorman to stop the car after he was apprised of her perilous position; (4) in not having the brake on the car in proper condition; (5) in the failure of the motorman to keep a lookout for pedestrians in the street.

The appellant, after denying all material allegations of the complaint, set up the defense of the contributory negligence of appellee.

Appellee, a woman about 40 years old, whose hearing was very defective, but whose sight was good, on the morning of June 10, 1904, between nine and ten o'clock, was walking across Garrison Avenue in the city of Fort Smith, when she was struck, knocked down and very severely injured by appellant's car. Appellee was walking leisurely across the street. There were double car tracks in the middle of the street. The cars from the western direction could be seen for several blocks from the place where appellee was injured. She had gone nearly to the first track before she saw a car. She there looked, saw a car some distance away, thought she had plenty of time to cross, did not look again, but only listened for the bell and went on. She heard "a confusion, looked up and saw the car too close to get out of the way," and then did not remember anything more about it. This was according to appellee's individual testimony. Other witnesses in her behalf say that she was moving across the street deliberately, rather slowly; that she was crossing the street diagonally, and seemed to be looking to the south, "head down and sidewise." One witness says she had something in her hand, and seemed to be looking at it.

One of the witnesses on behalf of appellee testified that as he came to the front of his store he looked up and saw Mrs. Barnes (appellee) coming across the street, and at the same time he noticed a car; he did not suppose the car was over twenty feet from

where it struck her, between twenty and thirty feet.  He thought
she was not going to try to cross the track, but she went on; and
when she got on the track where she was struck, the car was then
within twelve or fifteen feet of her.  The witness hallooed.  She
seemed to hear him, turned and "grabbed at the dashboard," and
was drawn under the car.  At the time this witness saw Mrs.
Barnes she was about the north rail of the north track, some
eight and one-half or nine feet from the north rail of the track on
which she was struck.  The car, according to this witness, was
running about twelve miles per hour.  At the time he hallooed,
or just after, he heard a gong sound.  Just before the car struck
appellee, the motorman was trying to lean over, and was trying
to stop the car, and looked like he was hallooing.

Another witness for appellee was in a buggy on the avenue
near where the injury occurred, and saw it.  Appellee was going
diagonally across the street.  She had something in her hand, and
seemed to be looking at at; had her head cast down.  She was
moving deliberately and slowly towards the tracks.  Witness
looked toward the river, and saw car coming.  It did not seem to
be moving faster than they ordinarily travel.  The witness heard
two sounds of the gong.  The bell rang twice in succession.  It
was a dull sound.  The witness barely heard it.  He was some
sixty-two or sixty-three feet from the car at the time.  Witness
looked from the woman back to the motorman.  He looked from
one to the other.  The motorman looked straight ahead down the
avenue, and then turned and spoke to a man by his side.  At the
time this occurred the woman was about half way between the
north and south track.  When the motorman looked east, and
turned and talked to the man, it was almost instantly.  The mo-
torman was within twenty feet of the woman at the time he turned
to speak to the man.  At the time the motorman turned to speak
to the man the woman was between the north and south tracks.
She had not reached the south track at that time, and the witness
says she was in no danger.  The motorman, when the witness
looked back at him, seemed to have his hand on the iron that
controls the car, the brake, and was talking to another man in
front.  He looked once toward the direction of the street ahead,
his vision was in the direction of the woman, then he turned again
and commenced talking to a man.  When the motorman looked

in the direction of the woman, there was nothing to prevent him from seeing her. There was testimony on behalf of appellee tending to prove that the gong or bell was hard to ring, that they had to jump on it to make it ring, and that then it only made a "faint" sound. There was testimony also tending to show that the car at the time it struck appellee was running more than fifteen miles per hour. An ordinance of the city prohibited street cars from running more than fifteen miles an hour on Garrison Avenue. There was testimony on behalf of appellant tending to prove that the gong was in good condition and the car otherwise well equipped, that the motorman was free from negligence in operating the car, that he did all in his power, after discovering the perilous position of appellee, to prevent injuring her.

The court, among others, gave the following instructions. on its own motion:

"4. If you find from the evidence that one of defendant's servants or agents was in charge of one of defendant's cars in and upon Garrison Avenue in the city of Fort Smith at the time mentioned in plaintiff's complaint, and that said servant or agent saw plaintiff on or near the track upon which said car was moving, and that said servant saw plaintiff was in danger of being struck and run over by said car, and that she was unaware of such danger, and could not avoid it, and that he so saw her in time to have avoided the said car striking and running over her by the exercise of ordinary care on his part, if in fact she was struck and run over by said car, and that said servant or agent, after he so saw plaintiff, neglected and failed to use ordinary care to prevent said car from so striking and running over her, if in fact she was so struck and run over, then your verdict will be "for plaintiff, notwithstanding you may further find from the evidence that plaintiff was negligent in being upon or near said track.

"6. If you find from the evidence that defendant was, at the time mentioned in plaintiff's complaint, operating a system of street cars over its track or tracks in Garrison Avenue in the city of Fort Smith, then it became and was the duty of the defendant, in so operating its cars over said track, to use that degree of care and caution that a man of ordinary care and prudence engaged in such business would exercise so as not unnecessarily or negligently to injure persons occupying said avenue.

"8. Contributory negligence in actions like this is a defense on the part of the defendant. But contributory negligence is never presumed; it, like any other fact, must be proved, and the burden of proving circumstances or facts that prove plaintiff herself was negligent is upon the defendant, which it must establish by the evidence fairly preponderating upon this proposition, unless it sufficiently appears to you from the evidence introduced by plaintiff. And, should you find from the evidence that plaintiff herself was guilty of some negligent act or acts that proximately contributed to cause the injuries complained of, your verdict will be for the defendant, unless you should further find from the evidence that defendant's agent or servant in charge of one of defendant's cars at the time and place mentioned in the complaint became aware of the negligence of plaintiff, if there was any such negligence, in time, by the exercise of ordinary care and diligence upon his part, to have avoided injuring plaintiff, if you find she was so injured."

And at the request of appellant gave the following:

"7. It was the duty of plaintiff to look and listen before she went upon the track; and if she was so deaf that she could not hear an approaching car, or the gong upon such car, as persons of ordinary hearing can, then she was bound to make more careful use of the sense of sight; and if you find that she could have seen the car in time to avoid it, she can not recover, unless you further find that the motorman was negligent after he saw her danger.

"8. The burden of proving that the motorman saw the plaintiff's peril in time to avoid striking her, and that he was negligent in not exerting himself to stop after he saw her peril, is upon the plaintiff.

"9. If, at the time plaintiff stepped upon the track, the car was so far away that she could have safely turned back or passed on before it, she can not recover, unless the motorman was negligent in failing to stop after he saw her peril."

The court also gave many other instructions covering every phase of the testimony. The court refused to give a general peremptory instruction in favor of appellant, and also refused requests for specific peremptory instructions in favor of appellant on the particular allegations of negligence in the complaint.

The jury returned a verdict of $1,750. Judgment was entered for said amount, which this appeal seeks to reverse.

*Mechem & Mechem* and *Brizzolara & Fitzhugh,* for appellant.

1. The court erred in refusing defendant's request for a peremptory instruction, because there was no evidence of negligence on the part of defendant in any particular alleged in the complaint. 91 S. W. 505; 83 N. W. 770; 69 N. W. 982; 159 Mass. 323; 3 Greenleaf, Ev. § 375; 72 Ark. 572. Also because the undisputed evidence shows that plaintiff was guilty of negligence which contributed to her injury. Such being the case, she could recover only by proving that the motorman was negligent in failing to stop the car after he saw her peril. 72 S. W. 329; 75 S. W. 672; 54 Atl. 612; 110 La. 970; 46 Pac. 136; 79 Pac. 873; 37 So. 452; 71 N. E. 270; 86 N. W. 346; 37 Atl. 206; 92 N. W. 502; 85 S. W. 351; 82 N. W. 518; 58 Atl. 653; 61 Atl. 77.

*Sam R. Chew,* for appellee.

1. The question of contributory negligence on the part of appellee was properly submitted to the jury, since the evidence developed a state of facts concerning which reasonable men might differ. 62 Ark. 164; 144 U. S. 408.

2. In its use of the streets a street car company must exercise such care as a reasonably prudent person, under the peculiar circumstances of the case, would exercise, the specific degree of care to be measured by the nature and character of the business, the appliances and the danger ordinarily incident thereto. 42 Ark. 321. If it be held that the rule here announced has been overruled by 62 Ark. 164, then it became a question of fact for the jury in this case to say whether a person of ordinary prudence in operating the car through a street frequented by many people, would have kept a lookout for persons on its track. 69 Ark. 289; *Ib.* 130.

3. There was evidence to show that the appellee was at the time unconscious of her peril, and that the motorman saw her. If he saw her in this position, it became his duty to use all means reasonably within his power to stop the car and avoid injuring her. 46 Ark. 513; 86 S. W. 426.

WOOD, J., (after stating the facts.)  1.  The uncontradicted proof by appellee and her witnesses shows that she was guilty of contributory negligence.  She "deliberately" walked upon the track of a street railway after she had looked and knew that a car was coming.  Her only excuse was that, after she looked and saw the car, she "thought she would have plenty of time to cross," and kept listening for the gong, but did not hear it until the car was upon her.  A more palpable case of contributory negligence it would be difficult to imagine.  It was shown that her hearing was bad.  This made it incumbent upon her to use the more diligently the unimpaired sense of sight, and to continue to use it until the danger had passed.  *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549; *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134.  Instead, after seeing and knowing that the car was approaching on the track she had to cross, she practically closed her eyes, relying upon her judgment as to the distance the car was away and the time she had to cross, and upon her imperfect hearing to. protect her in case she was mistaken.  She was mistaken, and the mistake was inexcusable, and must eliminate every charge of negligence in the complaint except the "failure of the motorman to use the means at his command to stop the car after he was apprised of her perilous position."  It has been difficult for us to determine whether the evidence in favor of appellee, giving it the strongest probative force of which it is susceptible (*St. Louis, I. M. & S. Ry. Co.* v. *Hill,* 74 Ark. 478), was sufficient to suport the verdict on this allegation.  The testimony of the motorman himself, pertinent to this proposition, is as follows:

"I turned this way, and I saw the lady, and it seemed to me that I was fifty or sixty feet away from her at the time I saw her.  It seemed to me that she was almost standing between the two inside rails of the two tracks.  I was on the right-hand side, going east, and she was in between the north track and the south track, in between the two rails, seemed to be standing perfectly still.  I thought at that time she was standing to wait for the car to pass, would step back and wait for me to pass, and as soon as I saw her she was too close for me to go at that speed; so, as soon as I saw her—my current was already turned off—the brake chain is a chain something like that (indicating)—it is owing to

how you jerk the chain, but it generally takes a round and a half sometimes a little more, to bring the car to a stop—I tightened up the brake and slackened the speed of the car, and began ringing my bell, began tapping with this foot, and then I tied my brake, I think, and by that time I was getting pretty close to her—it was just a matter of a few seconds—and by that time she had stepped from her original position towards my inside rail, and then I saw, whether she moved or not, I was going to strike her. She had got too close to me, and I reversed the car. I was then fifteen feet away from her when I reversed the car—I can not tell, but something like that. I reversed the car, tightened my brake a little more. The action of the current running backward, the momentum was a little greater than the current at that time, and the car slid on a little and struck her while it was sliding. It knocked her down, and then the car stopped. The platform passed on over her."

This evidence discloses the fact that the motorman discovered the appellee when he was 50 or 60 feet from her, and he knew at the time he discovered her that she was too close to the track for him to go at the rate of speed he was then going. He testifies that the highest rate of speed of his car, from the time he stopped to take on a little boy at Seventh Street till the accident occurred, could not have been over ten miles an hour. True, this witness says he thought appellee was going to step back, and and let his car pass. He shows that the current was turned off, and that he began tightening the brake and ringing the bell when he first saw her, and that, in a few seconds, when he was fifteen feet from her he saw that he must strike her; he then reversed the car. But the proof by one of the witnesses was that when he was about twenty feet from her he looked toward the woman, then turned and spoke to some one on the platform with him. The witnesses on behalf of the appellee say that the car was going all the way from twelve to eighteen miles per hour. No one except the motorman observed any diminution in the speed of the car from the time when the motorman says he first saw her. Only two or three sounds of the gong were heard by any other witness, and those were very dull and faint. There was no constant tapping of the gong. One of the witnesses did not see the motorman do anything until *just before the car struck appellee, when he was trying*

*to lean over and trying to stop his car,* and seemed to be hallooing.

The testimony of witnesses for appellee differs widely from the motorman's on some points. It was for the jury to determine the facts from all the testimony. After a careful consideration of it, we have concluded that the jury might have found that appellee approached appellant's car tracks oblivious of her danger; that appellant's motorman discovered her peril in time, by the use of ordinary care, to prevent running her down, and that he failed to exercise such care. The motorman from the time he saw her could have diminished the speed of his car more than he did. Indeed he might have stopped it, or reversed it. It is clear that he had observed her, and equally clear that she had not observed him. Ordinary care under the circumstances required something more to be done toward giving a warning than attempting to sound a gong that, at best, would only give forth a faint sound. When he saw that she did not hear or was not heeding the warning, he should have hallooed, put on the brakes, and reversed the car, all before he did. The verdict should be sustained under the principle announced by this court in *St. Louis, I. M. & S. Ry. Co.* v. *Evans,* 74 Ark. 407, and cases there cited.

The instructions of the court were full and clear on every point presented by the pleadings and proof, and, in view of what we have said, it was not error for the court to refuse to take the case from the jury on account of the contributory negligence of appellee.

Affirm the judgment.

HILL, C. J., not participating.

ON REHEARING.

Opinion delivered October 8, 1906.

WOOD, J. Appellant insists that the court erred in holding that there was any proof that the motorman was guilty of negligence after he discovered the plaintiff's peril.

We have carefully considered the testimony bearing upon this question; and while it is not without difficulty, we do not see any reason to change the views expressed heretofore. We ad-

here to the conclusion that there was evidence sufficient here to uphold the verdict.

It is also contended that, inasmuch as this court has declared as matter of law that the appellee was guilty of contributory negligence, it was error for the lower court to submit that question to the jury. If appellant had asked the trial court to declare that appellee upon the undisputed evidence was guilty of contributory negligence, and the trial court had refused, and it had excepted to the ruling, or if it had rested on its objection to the court's instructions in which the question of contributory negligence was submitted to the jury, it would then be in a position to complain. But it did not make such request, nor rest on its objection to instructions given. On the contrary, by asking the court to submit the question of the contributory negligence of appellee to the jury on the evidence as a matter of fact, it abandoned its objections to the court's instructions submitting that question, acquiesced therein, and waived any objections it might have raised here to the ruling of the court in submitting that question. Appellant did not ask the trial court to confine the jury to the question of whether or not the appellant discovered appellee's perilous position and, having discovered same, failed to exercise ordinary care to avoid injuring her. Not having requested that the issue be narrowed to this inquiry in the court below, appellant can not complain here because it was not done.

True, appellant asked for peremptory verdict, but, as we have determined that there was a question for the jury, the court did not err in refusing this request.

As there was no error in the court's charge of which appellant can complain here, the only question for us has been whether, giving the evidence its strongest probative force in favor of the verdict, it was legally sufficient to uphold it.

Judge BATTLE concurs in the judgment, but thinks that there was sufficient evidence to warrant the submission to the jury of the question of contributory negligence.

HILL, C. J., (dissenting.) I was absent the week this case was decided, and did not have the benefit of the consultation, and have had to go into it on the motion for rehearing for the first time.

There were several charges of negligence against the ap-

pellant company and counter charges of contributory negligence against appellee, the plaintiff below. These issues were sent to the jury, and also the question of proper care of the motorman to avoid the injury after discovering Mrs. Barnes's peril. The latter issue, predicated upon Mrs. Barnes's negligence and evidence of due care and want of due care after the discovery of her peril, was a proper question for the jury to determine. All the judges agree that there was evidence sufficient to sustain a verdict either way upon that point. This should have been the only issue sent to the jury. The opinion of the court shows that Mrs. Barnes's own testimony shows she was guilty of contributory negligence.

A majority of the judges on rehearing reaffirm that fact. Therefore all questions of negligence against the company were eliminated by her contributory negligence, save alone the negligence after discovery of her peril. It was therefore a mistake for the court to affirm the case when other issues besides this one were sent to the jury. The court can not tell whether the jury found for the appellee upon the only proper question for them to determine or upon one of the several improper grounds that they were authorized to bottom a verdict upon.

It is thoroughly settled law that it is the duty of the court to refuse instructions based on unproved or unfounded hypotheses, and it is reversible error to submit a theory not warranted by the evidence. *State Bank* v. *Hubbard,* 8 Ark. 183; *Worthington* v. *Curd,* 15 Ark. 491; *Sadler* v. *Sadler,* 16 Ark. 628; *Richardson* v. *Comstock,* 21 Ark. 69; *Marshall* v. *Sloan,* 26 Ark. 513; *Burke* v. *Snell,* 42 Ark. 57; *Little Rock & F. S. Ry. Co.* v. *Townsend,* 41 Ark. 382; *Beavers* v. *State,* 54 Ark. 336; *St. Louis, I. M. & S. Ry. Co.* v. *Denty,* 63 Ark. 175; *Snapp* v. *Stanwood,* 65 Ark. 222; *St. Louis, I. M. & S. Ry. Co.* v. *Woodward,* 70 Ark. 441. Therefore it follows that the judgment should have been a reversal, instead of an affirmance. The majority of the court concede this mistake, but say that appellant is not in position to complain of the error, as it asked instructions relating to the contributory negligence of Mrs. Barnes.

The record shows that the court gave the instructions submitting these issues, and to each of them the appellant objected, and, its objection being overruled, excepted; and thereafter the

appellant asked various instructions, among others these:

"2. One who is about to enter upon the track of a street railway where she knew that cars pass frequently at considerable speed must look and listen before entering upon such track, and must so look and listen when and where so doing will enable her to see and hear a car which is so near that she can not safely pass before it.

"4. If the evidence shows that in broad daylight, with no obstacles to prevent her from seeing an approaching car, the plaintiff stepped upon the track when the car which struck her was so near that it could not be stopped in time to avoid striking her, she contributed to her own injury, and can not recover."

None of the other instructions went to the issue of contributory negligence alone; they went to that issue in connection with the care of the motorman after discovering appellee's peril and to other phases of the case.

Invited error is predicated upon estoppel, and is invoked properly wherever the appealing party has induced the error, or acquiesces in it, or avails himself of the error to his own advantage. It is properly applied where the complaining party asks an instruction similar to the one attacked, and in many similar instances. *Klein* v. *German Nat. Bank,* 69 Ark. 140; *Long-Bell Lumber Co.* v. *Stump,* 30 C. C. A. 260, s. c. 86 Fed. 574; Elliott, App. Proc. § § 626, 627.

But this is not such a case, nor analogous in principle to it. Here the court, over objection and exception, gives a certain theory to the jury. Then appellant seeks to minimize the error by asking instructions presenting phases of the inapplicable theory which, if applicable, would be favorable to his contention. This is not availing himself of the error to his advantage, nor an acquiescence in it, but a proper effort to reduce the effect of the error to the least harmful form. He has not induced or brought about the submission of this question of contributory negligence; on the contrary, has objected and excepted to it. The court presents only such phases of it as favor appellee, and it was, in my opinion, the duty of appellant's counsel to then ask the court to give such phases of this theory as favored his contention, so that he might properly argue to the jury that appellee was guilty of contributory negligence. The court should have

said she was guilty of contributory negligence, instead of leaving it to the jury; but, having left it to the jury, it was the right and duty of appellant's counsel to see that the law on that subject was fairly explained, so that the jury could understand that she was guilty of negligence. In other words, if the law on that subject was going to be given, every phase applicable should be given, and not merely that favoring appellee. When the court made shipwreck of the case, it was appellant's duty to obtain all the salvage possible, and I do not think the seeking to save salvage from the wreck is an estoppel to complain of the cause of the wreck.

It seems to me that this application of the doctrine of invited error is beyond the principle controlling the proper application of it, and is without precedent, so far as I can find; certainly without precedent in this State. I hazard the assertion that more than half the reversals in personal injury cases found in the reports would have been obviated, had this doctrine as now applied been earlier invoked. I think this decision is revolutionary of the practice, and has no sound basis to rest upon.